## Case No. 16,740.

### UNITED STATES v. WINN.

[3 Sumn. 209.] [1]

Circuit Court, D. Massachusetts. May Term, 1838.

SEAMEN—BEATING BY MASTER—CONSTRUCTION OF STATUTE—"CREW" DEFINED.

1. Under the act of congress, of 1835, c. 40 [4 Stat. 776], providing, "that if any master or other officer, &c., shall from malice, hatred, or revenge, and without justifiable cause, beat, wound, or imprison any one or more of the crew, &c.," he shall be punished by fine, &c., *held*, that the word crew was intended to include the officers, as well as the common seamen, and that a master was liable, under the statute, for an imprisonment of the first mate of his ship.

[Cited in U. S. v. Pratt, Case No. 16,082. Quoted in U. S. v. Huff, 13 Fed. 633.]

2. Wherever in a statute, the words master and crew occur in connection with each other, the word crew embraces all the officers, as well as the common seamen.

[Cited in The Marie, 49 Fed. 287.]

3. In the construction of penal statutes, the proper course is to search out and follow the true intent of the legislature, and to adopt that sense, which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature.

[Cited in The Bolina, Case No. 1,608; U. S. v. Rhodes, Id. 16,151; U. S. v. Hartwell, 6 Wall. (73 U. S.) 396; U. S. v. Hutchinson, Case No. 15,431; U. S. v. Mattock, Id. 15,-744. Quoted in U. S. v. Pratt, Id. 16,082. Cited in U. S. v. One Raft of Timber, 13 Fed. 798; Gardner v. 1,467 Bales of Cotton, 20 Fed. 529; U. S. v. Trice, 30 Fed. 495; U. S. v. Ellis, 51 Fed. 810; U. S. v. Lacher, 134 U. S. 628, 10 Sup. Ct. 625.]

[Cited in Schultz v. Pacific R. Co., 36 Mo. 27; Kane v. Union Pac. R. Co., 5 Neb. 109; Pike v. Jenkins, 12 N. H. 261; Leicht v. Board of Excise, 19 N. Y. Supp. 3.]

[1] [Reported by Charles Sumner, Esq.]

Indictment against the defendant [John D. Winn], master of the ship Eliza, for having from malice, hatred and revenge, and without justifiable cause, on the high seas, beaten and imprisoned one John B. Bassett, one of the crew of the same ship, against the statute of March 3, 1835 (chapter 40, § 5). Plea, not guilty.

At the trial, the facts established a very aggravated imprisonment of John B. Bassett, who was chief officer of the Ship Eliza (of which the defendant was master), at two different times, one by confinement to his state-room for five or six weeks, and another for three months, at the Feegee Islands and other places in the Pacific Ocean.

At the trial, Choate and Lord, for the defendant, contended, that an imprisonment by the master of an officer of the ship was not within the purview of the act; and that by crew, in the act of 1835, common mariners or seamen only were intended, in contradistinction to officers. The court ruled, that the case, if proved to the satisfaction of the jury in point of fact, was within the purview of the act of 1835. But, at the same time, suggested to the defendant's counsel, that they might move for a new trial, if, upon further consideration, the objection appeared to them worthy of the more deliberate consideration of the court. The jury found the defendant guilty. [Case No. 16,739a.]

And now Choate and Lord moved for a new trial upon the point saved at the trial. They contended, that the act of 1835 provided for the punishment of the master or other officer, who should beat, wound, or imprison, &c., any one or more of the crew, thereby making a distinction between the "master," "other officers," and "the crew," and not contemplating a case like the present, where the "master" was charged with imprisoning one of the officers. The act was intended merely for the protection of the crew from an abuse of power by those placed over them.

Mr. Mills, U. S. Dist. Atty.

Before STORY, Circuit Justice, and DAVIS, District Judge.

STORY, Circuit Justice. The words of the third section of the statute of 1835 (chapter 40) are as follows:—"That if any master or other officer of any American ship or vessel on the high seas, or on any other waters within the admiralty and maritime jurisdiction of the United States, shall, from malice, hatred, or revenge, and without justifiable cause, beat, wound, or imprison any one or more of the crew of such ship or vessel, or withhold from them suitable food and nourishment, or inflict upon them, any cruel or unusual punishment, every such person so offending, shall, on conviction thereof, be punished by fine not exceeding, &c., or by imprisonment not exceeding, &c., or by both, according to the nature and aggravation of the offence." And the question now present

ed for the ·consideration of the court is, whether the offence, when committed by the master upon the chief or other officer of the ship, is an offence within the purview and intent of the statute. In other words, is the word "crew" in the section used in contradistinction to officers of the ship, and so including the common seamen or mariners only; or does the word "crew," in the sense of the statute, embrace all the officers, except the master, as well as the common mariners.

Now, I do not think any thing material in the construction of this statute can turn upon the rule so ably and strenuously expounded at the bar, that penal statutes are to be construed strictly. I agree to that rule in its true and sober sense; and that is, that penal statutes are not to be enlarged by implication, or extended to cases not obviously within their words and purport. But where the words are general, and include various classes of persons, I know of no authority, which would justify the court in restricting them to one class, or in giving them the narrowest interpretation, where the mischief to be redressed by the statute is equally applicable to all of them. And where a word is used in a statute, which has various known significations, I know of no rule, that requires the court to adopt one in preference to another, simply because it is more restrained, if the objects of the statute equally apply to the largest and broadest sense of the word. In short, it appears to me, that the proper course in all these cases, is to search out and follow the true intent of the legislature, and to adopt that sense of the words, which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature. I adopt, on this subject, the doctrine laid down in the case of The Industry [Case No. 7,028], and which, I am persuaded, is in perfect consonance with the general authorities most considered and most relied on in cases of this sort. The court there said: "We are undoubtedly bound to construe penal statutes strictly, and not to extend them beyond their obvious meaning by strained inferences. On the other hand, we are bound to interpret them according to the manifest import of the words, and to hold all cases which are within the words, and the mischiefs, to be within the remedial·influence of the statute." The most restricted sense, then, is not, as a matter of course, to be adopted as the true sense of the statute, unless it best harmonizes with the context, and stands best with the words and with the mischiefs to be remedied by the enactment.

Now, the word "crew" has several well-known significations. In its general and popular sense, it is equivalent to "company." Thus, for example, we find the most general definition of it laid down in Johnson's Dictionary to be "a company of people associated for any purpose." And the same learned lexicographer adds, that, when spoken with reference to a ship, the crew of a ship, or ship's crew, means "the company of a ship," illustrating it by a verse from Dryden's translation of the Aeneid:

"The anchor dropped, his crew the vessel moor."

Falconer, in his Marine Dictionary, says: "The crew of a ship ("Equipage," French) comprehends the officers, sailors, seamen, marines, ordinary men. servants, and boys"; adding. "but exclusive of the captains and lieutenants in the French service." Whether this definition, so far as it is applicable to the French service, is correct or not, it is not necessary to decide, though M. Boulay Paty, in his vocabulary annexed to his edition of Emerigon, has defined "equipage" somewhat differently. "Equipage se forme de tous les Hommes d'un Batiment, portés sur un Registre, que l'on nomme Role d'equipage. Les officiers sont designés sous celui d'Etat Major. 2 Emerigon des Assur. Par. Boulay Paty (Ed. 1827) ·p. 682. Valin, after giving the text of the Ordinance of the Marine (Liv. 2, tit. 1, du capitaine, art. 5), "Appartiendra au Maitre de faire l'Equipage du Vaisseau, de choisir et louer les pilote, contre-maitre, matelots et compagnons," in his commentary, adds: "Ces termes, Matelots et compagnons, employés dans cet article, sont synonymes. De tous temps, suivant les us et coutumes de la mer, les matelots ont été designés sous le nom de compagnons du Maitre." 1 Valin, Comm. 886. In this sense it is nearly equivalent to our phrase crew. or ship's company. See. also, Poth. Mar. Cont., by Cushing, pp. 98, 99. note 163. Roccus (De Nav. et Naut. note 9) has used the word "Nauta," in the same general sense. "Habet (Navis) etiam nautas, quod est nomen generale, et comprehendit. omnes personas, quæ in navi deserviunt, et faciunt illam navigare." But upon a question of the construction of our own laws, little light can be derived from the usages of language in foreign nations.

The general sense of the word "crew," being then, as I think, equivalent to ship's company, which, it can scarcely be doubted, embraces all the officers, as well as the common seamen, that sense ought not to be displaced, unless it is manifest, that the legislature have used the word "crew" in a more restrictive sense; and this must be ascertained, either from the context, or from the object to be accomplished by the enactment. Now, in examining our laws upon maritime subjects, it will be found, that the word "crew" is used sometimes in the general sense above stated, and sometimes in other senses, more limited and restrained. It is sometimes used to comprehend all persons composing the ship's company, including the master; sometimes to comprehend the officers and common seamen, excluding the master; and sometimes to comprehend the common seamen only, excluding the master and officers. But in these two last·classes, I think, upon close examination, it will be found· that the context always con-

tains language which explains and limits the general to the particular sense.

There are various acts of congress in which the words "crew" and "ship's company" are used as equivalent to each other. In the ninth section of the act of 1790, c. 56 [1 Story's Laws, 106; 1 Stat. 134, c. 29], requiring a certain quantity of provisions to be put on board for every person in a foreign voyage, the word "crew" seems used as equivalent to ship's company, and to include officers, as well as common seamen. See, also, Passenger Act 1819, c. 170, § 3 [3 Story's Laws, 1722; 3 Stat. 488, c. 46]. In the act of 1803, c. 62, § 1 [2 Story's Laws, 893; 2 Stat. 203, c. 9], which requires the master to deliver to the collector a list and "description of the persons composing his ship's company, to which list the oath or affirmation of the master shall be annexed, that the list contains the names of his crew," &c., &c., it is plain, that crew and ship's company are used as equivalent; and the form of the list prescribed by the treasury department shows that all the officers are included as a part of the ship's company or crew. See, also, Act 1813, c. 184, § 3 [2 Story's Laws, 1302; 2 Stat. 809, c. 42.] In the salvage act of 1800, c. 14, § 4 [2 Stat. 18], the distribution of the salvage in cases of recapture is to be among the commanders, officers, and crew of public armed vessels; and in case of private armed vessels, "among the owners and company," which manifestly includes the master, officers, and common seamen, or the whole ship's company. In the piracy act of 1819, c. 200 [3 Story's Laws, 1738; 3 Stat. 510, c. 77], the first section, in providing for the employment of the public ships of the United States "in protecting merchant-vessels of the United States and their crews from piratical aggressions and depredations," manifestly includes the master and officers, as well as common seamen, in the descriptive word, "crew." The second section of the same act uses the word, "crew," in the same comprehensive sense, as applicable to the persons belonging to the piratical vessel. On the other hand, the third section speaks of the "commander and crew of every merchant vessel," and authorizes them to oppose and defend themselves against any piratical aggression, in which the word, "crew," as clearly comprehends all the officers and common seamen. In the piracy act of 1820, c. 113, §§ 3–5 [3 Story's Laws, 1798; 3 Stat. 600, c. 113], the words "crew," and "ship's company" are used as exact equivalents: "If any person, being of the crew or ship's company of any piratical ship or vessel, shall land," &c. &c.; and "if any citizen, &c., being of the crew or ship's company of any ship or vessel, &c., shall land." &c.; where the word manifestly comprehends the master, officers and common seamen. In the act of 1792, c. 24, § 8 [1 Story's Laws, 235; 1 Stat. 256], respecting the discharge of the crew of the vessel in a foreign country, it is provided that "the master, unless the crew are liable by their contract to be discharged there, or do consent, shall send them back." Here

the word "crew" embraces officers, as contradistinguished from the master. And, generally, it may be stated, that wherever in a statute the words master and crew occur, in connection with each other, the word crew embraces all the officers, as well as the common seamen. See Abb. Shipp. pt. 2, pp. 87, 88, c. 1, § 5. On the other hand, in the act of 1817, c. 204, § 3 [3 Story's Laws, 1622; 3 Stat. 351, c. 31], providing, that bounties in the fisheries shall be to such vessels only where "the officers and three-fourths of the crew" shall be citizens, the word crew is used as applicable to the common seamen or fishermen only. So, in the act of 1790, c. 56, § 3, where it is provided "that if the mate or first officer under the master, and the majority of the crew of any ship or vessel," &c. shall discover the vessel to be leaky, &c. they may require the vessel to proceed to some convenient port to examine her state, the same construction must prevail; or rather, the word "crew" there comprehends all the officers, except the mate or chief officer, as well as the common seamen.

The result of this examination of some of the leading provisions of our own statutes upon similar subjects shows that the word crew is ordinarily used as equivalent to ship's company, and that, whenever it is not intended to embrace the officers, the context manifestly excludes them, by enumerating them, as contradistinguished from the rest of the crew.

But, passing from the consideration of other statutes, let us now proceed to the examination of that of 1835 (chapter 40), upon which our judgment must finally turn. The first section provides, "that, if one or more of the crew of an American ship or vessel, on the high seas, &c., shall unlawfully, &c., usurp the command of such ship or vessel, from the master or other lawful commanding officer thereof, &c., &c., every such person, &c., shall, on conviction," &c., be punished as provided for in the act. Now, it seems to me, that every other officer of the ship, except the master or commanding officer, is, and ought to be, deemed within the purview of the act, as one of the crew. He may commit the offence of usurping the command of the vessel, as well as a common seaman; and the mischief is the same as in the case of a common seaman; and he is one of the crew or ship's company, in the sense of the general maritime law. Why, then, should not the section be construed to embrace all cases within the words, and within the mischiefs? Why should we resort to the narrowest possible sense of the words, instead of the general sense, if there is the same mischief in each case to be suppressed, and the same public policy in the protection of the commercial interests of the country? The second section admits of similar considerations. It provides, that, "if any one or more of the crew of an American ship or vessel, on the high seas, &c., shall endeavor to make a revolt," &c., he shall be punished, as stated in the act. Why is not

an officer, not being the commanding officer, to be deemed within the purview of the section? The offence would be even more reprehensible, when committed by a subordinate officer than by a common mariner. So far from there being any public or presumed policy in exempting such an officer from the reach of the penalties of the section, there would seem to be a very strong ground for holding him within it. Why then should the general import of the word "crew" be restricted in his favor? When we come to the third section, the language is somewhat varied. It provides, "that if any master, or other officer, of an American ship, or vessel, on the high seas, &c., shall, from malice, hatred, or revenge, and without justifiable cause, beat, wound, or imprison any one or more of the crew of such ship or vessel, or withhold from them suitable food and nourishment, or shall inflict upon them any cruel and unusual punishment." Now, the plain object of this section is not to punish every offence of the like nature committed by any person, belonging to or on board of the vessel, when committed upon any other person, belonging to or on board of the same vessel. The offence can be committed only by the master, or an officer of the ship; and it must be committed upon some person, belonging to the ship, and of the crew of the ship. Hence, the like offence, when committed by any one of the crew, not being an officer, or by a passenger or a stranger on board, is not punishable by the act. And so, on the other hand, the offence, when committed by the master or other officer of the ship, upon any person on board, not of the crew, as, upon a passenger, or a stranger, is also not within the reach of the act. It was, manifestly, then, the intention of the act to punish only such offences, as were committed by persons standing in a particular relation to each other on board. There is also some reason to infer, that the object of the section was confined to the offence, when committed by a superior upon some person who stood in relation to him in the character of a subordinate, or in a subordinate station. The consideration, that the acts enumerated are required to be done by officers from malice, hatred, or revenge, and without justifiable cause; that some of them, at least, are of a nature properly within the functions of a superior officer on board, and might be exercised officially for a justifiable cause, such as imprisonment, withholding suitable food and nourishment, and inflicting cruel and unusual punishments; and that ordinarily these acts could not be done on board, except by the instrumentality, consent, or authority of the superior officer on board; these circumstances, I say, do greatly enhance the presumption that the offence could be committed only by a superior officer upon some one inferior to him. In this view, the words "other officer" might well be interpreted to mean commanding officer, standing in connection with the word master, so as to import an officer ejusdem generis, pro hac vice. If this were to be admitted as the true interpretation of the section, then the word "crew" would naturally embrace all the ship's company, except the master or commanding officer at the time of the offence.

But suppose this construction not to be entirely free from doubt, and I cannot but think that there is considerable force in it, as a true interpretation of the legislative intention, from the very words used; let us proceed to consider the words of the section in other aspects. The words must be read distributively, "If any master shall from malice, &c., beat, wound, or imprison," &c.; or "if any other officer shall, from malice, &c., beat, wound, or imprison," &c. Now, if the first clause only had been in the section, "If any master shall, from malice, beat, wound, or imprison any one or more of the crew of such ship or vessel," I confess that I should have entertained no doubt that the word "crew" was here used in its most comprehensive sense, as embracing all the officers under the master, as well as the common seamen. The words, master, and crew, in such a connection, naturally embrace all persons on board constituting the ship's company; and our statutes (as we have seen) so interpret them. Can it make any difference whatsoever in the case, that the words "other officer" are added? They only extend the persons, who may become offenders; but they do not change or limit the persons, against whom the offence may be committed. The word "crew" ought reasonably (one should suppose) to receive the same interpretation, whether the words "other officer" are in or out of the statute. Now, because the offence must be committed by the master, or other officer, it does not follow in reason, that it may not be committed upon another officer as well as upon a common seaman. If the word "crew," in its general sense, includes officers, as well as common seamen, there does not seem any ground, why the interpretation should be restricted to the latter. It is not so common for a master or other officer to beat, wound, or imprison another officer, as to beat, wound, or imprison a common seaman. But the act is not the less reprehensible in the former case, than in the latter. Indeed, it is justly considered more reprehensible; for it goes to the overthrow of all authority and discipline, and degrades the officers in the eyes of the whole body of seamen. The mischief to be remedied, then, is, to say the least, equal; and the public policy the same. The word "crew," in its general, appropriate, and even popular sense, covers both cases. It admits, I agree, of being construed in a more restrained sense, which will not, however, reach the whole mischief. But my difficulty is, how the court is to presume, that the legislature intended the more restrained sense, when the word in its actual connection

equally admits of the general sense. The argument for the narrower interpretation, comes to this, that the words "master and other officers" are used in contradistinction to "crew" in the clause. But I think, that they are used merely as descriptive of the offenders, and that the word "crew" is used, not in contradistinction to "officers," but in contradistinction to other persons who might be on board, as passengers, or as mere strangers. The argument reads the clause as if it were, "If any master or other officer shall beat, wound, or imprison any of the rest of the crew, or any others of the crew, not an officer." Now, I am not prepared to say that this is the true reading. The more natural construction is, "If any master or other officer shall beat, wound, or imprison any other of the crew," if we must interpolate a word, to express the full sense.

Upon the whole, after much deliberation upon the subject, I adhere to the construction which was stated to the jury at the trial. I think the word "crew" was intended to include the officers, as well as the common seamen; and that the section uses the word as equivalent to ship's company. In this view, it is used in the same sense as it is in the first and second sections of the act; and for purposes equally important to the due protection of all engaged in the maritime service, and equally necessary for the safety and security of the voyage.