## UNITED STATES v. ZAGER.*
### No. 18056.

District Court, D. Maryland.
March 13, 1936.

*Order affirmed — F.(2d) —.

Bernard J. Flynn, U. S. Atty., and C. Ross McKenrick and T. Warren Rice, Asst. U. S. Attys., all of Baltimore, Md.

Cornelius Mundy and Wilfred T. McQuaid, both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case the defendant was indicted on October 8, 1935, on two counts, for violation of the Liquor Taxing Act of 1934, § 201, 26 U.S.C.A. § 267 (see 26 U.S.C.A. § 1152a). The first count charges transportation of ten gallons of untax-paid alcohol; and the second count charges the felonious possession of 996 gallons of untax-paid distilled spirits. By written agreement of the United States Attorney and counsel for the defendant, the case was tried to the court without a jury, the latter not being then immediately available. As to the first count, it is sufficient to say that the evidence does not justify a verdict of guilty and therefore it need not be further considered.

■ As to the second count, the uncontradicted evidence shows that on April 20, 1935, agents of the Alcohol Tax Unit, acting under a search warrant issued by the United States Commissioner, proceeded in the daytime to the residence of the defendant at 3205 St. Paul Street, Baltimore, Maryland, and there found in the basement of the two-story dwelling 246 gallons of alcohol and 750 gallons of whiskey, all untax-paid. The defendant who was present at the time denied personal ownership or responsibility for the liquor but upon the insistence of the agents, after some reluctance, personally produced the key which unlocked a compartment in the basement containing 75 ten-gallon kegs of whiskey. The containers of both the whiskey and the alcohol bore marks purporting to indicate St. Pierre and Holland as points of origin, but there was no other evidence than this as to whether the liquors were foreign or domestic. The defendant did not personally testify in the case and, of course, no inference can therefore be found against him with regard to the facts of the case, but there was no testimony offered on behalf of the defendant at the trial to negative the quite plain inferences from the Government's testimony that the liquors were in the possession of the defendant. The residence was that of the defendant, and,. while the upper story of the house had been rented to a third person who was said to be out of the city, there were other residents in the house, including the defendant's wife and son, who might have been but were not called as witnesses by the defendant, for possible available testimony as to the ownership or possession or control of the liquors.

■ The principal and only substantial defense urged by counsel for the defendant is that the evidence of violation of the Liquor Taxing Act as charged in the second count was legally inadmissible and should be stricken from the evidence because, as it is contended, the search warrant was improperly issued. A motion to quash the search warrant and to suppress the evidence obtained thereunder was filed on February 26, 1936. In the customary practice in this court such motions are usually heard, when filed in due time, before the trial of the case, but by agreement of counsel on both sides the motion was not pressed before the trial, and it was agreed that it should be heard and considered in the trial. And apart from the agreement, this would seem to be proper anyhow in this particular case as the Government's testimony fully developed facts and circumstances leading up to the. issuance of the warrant. Amos v. United States, 255 U. S. 313, 316, 41 S.Ct. 266, 65 L.Ed. 654; Rose, Federal Jurisdiction and Procedure (4th Ed.) § 139.·

■ The principal ground for suppressing the evidence contained in the motion and

urged at the trial is that the affidavit which is made the basis of the issuance of the warrant does not show sufficient probable cause, as required by the Fourth Amendment to the Constitution, and the regulatory provisions regarding search warrants as specifically enacted in the Espionage Act (title 11, § 3) to be found in 18 U.S.C.A. § 613, etc. The legal sufficiency of the warrant itself is not attacked. In my view the contention is not sustainable. The Commissioner issued the search warrant on the affidavit of an agent of the Alcohol Tax Unit which was reduced to writing and stated that he had good reason to believe and did believe that a violation of the Liquor Taxing Act was being committed in the premises described as 3205 St. Paul Street, Baltimore, Maryland, and the affidavit continued at some length to state the facts and circumstances which were the basis for the sworn belief. Much condensed, these were to the effect that he had received reliable information that the premises were being used "as a storage and transfer point for untax-paid liquor"; and that he thereupon with other agents kept the premises under observation on four different days from April 3rd to April 17th, 1935, inclusive, during which time he saw "out of state cars" enter the garage located in the rear of the premises (from which it otherwise appeared at the trial that there was communication with the rear of the dwelling) ; that the doors of the garage would then be closed and a short time afterwards the automobiles would leave, and in the meantime the defendant and other persons would keep the alley in the rear of the premises under observation; that on several occasions he saw the defendant and his son or wife put packages in the automobiles which packages appeared to be five-gallon cans or three-gallon cans wrapped in brown paper [see Wolstein v. United States (C.C.A.) 80 F.(2d) 779, C. C.A.8] ; and that on several occasions the automobiles belonging to the defendant and driven by him or his son, drove away, and, being followed, they were seen to deliver the same packages at various other houses; and on one occasion an automobile of the defendant driven by his son, in company with the defendant's wife, when followed was found to contain a five-gallon can of alcohol (otherwise shown to have been untax-paid) ; and on another occasion he saw a package resembling a five-gallon can wrapped in newspaper brought out of the front door of the premises by one man preceded by another man who was looking up and down the street apparently to see if the former was being observed. On these facts the warrant was issued on April 18, 1935, executed on April 20, 1935, and returned, with the inventory of the goods seized, on April 22, 1935.

In my opinion these facts constituted ample probable cause for the issuance of the warrant. "Facts and circumstances * * * such as to warrant a man of prudence and caution in believing that the offense has been committed," constitute probable cause. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Steele v. United States, 267 U.S. 498, 504, 45 S.Ct. 414, 69 L.Ed. 757; Dumbra v. United States, 268 U.S. 435, 436, 45 S.Ct. 546, 549, 69 L.Ed. 1032; Benton v. United States, 70 F.(2d) 24 (C.C.A. 4). In Locke v. United States, 7 Cranch, 339, 348, 3 L.Ed. 364, it was said by Chief Justice Marshall "the term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation. * * * It imports a seizure made under circumstances which warrant suspicion." See, also, Rose on Fed. Jurisdiction & Procedure (4th Ed.) § 103; United States v. Jakems (D.C.Mich.) 12 F.Supp. 227. The witness, O'Dea, experienced in observation work of this character, testified quite clearly as to the significance to him of the facts observed. In United States v. Murray, 51 F.(2d) 516, 519, it was said in an opinion in this court, involving the search of an automobile: "The question of what constitutes probable cause seems to me must be determined from the stand-point of the agent with his special skill and knowledge rather than from the standpoint of the average citizen under similar circumstances." See also Steele v. United States, supra, 267 U.S. 498, at page 505, 45 S.Ct. 414, 69 L.Ed. 757. And based on experience in this court in numerous somewhat similar cases, I would say that the facts and circumstances contained in the affidavit showed ample probable cause for the issuance of the warrant. Indeed it is not inappropriate to say here, as was said by the Supreme Court in the Dumbra Case, supra, that: "Absence of a well-grounded belief that such was the fact could be ascribed only to a lack of intelligence or a singular lack of practical experience on the part of the officer."

██ Certainly the right of the citizen to be protected against unreasonable searches and seizures as guaranteed by the Fourth Amendment, is a basic right protected by the Constitution, which must be liberally applied in the interest of individual liberty. Grau v. United States, 287 U.S. 124, 53 S.Ct. 38, 77 L.Ed. 212; Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260, 85 A.L.R. 108; Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159. But the rights of the citizen are not unduly invaded where the procedure for the obtaining and serving the search warrant is orderly and regular, based on probable cause, and executed, as in this case, in conformity with the statutory requirements. Here there was no subtlety or subterfuge or indirect motives in obtaining the warrant. The officer acted on reliable information, followed by extended personal observation, reasonably affording probable cause for action which, when taken, fully confirmed the justifiable suspicion. Under such conditions privacy even in the home of the law violator must yield to the reasonable and orderly enforcement of the laws.

██ It is somewhat faintly urged that the procedure in executing the warrant was defective in that no sufficient receipt was given to the defendant upon the seizure of the liquor as required by 18 U.S.C.A. § 622. But this point is not sustained by the evidence, which shows that a copy of the warrant and of the return thereon as subsequently made was given to the defendant at the time. The only alleged defect arises from the suggestion that the return is not literally in the form of a receipt, and also that there was a slight variation in the quantity of liquor as counted at the time of the seizure and in the subsequent return. This variation in detail is, however, legally immaterial.[1]

Another possible defect in the procedure was suggested at the argument. It relates to the provision of section 25 of title 2 of the National Prohibition Act, 27 U.S.C.A. § 39, which reads as follows: *"Unlawful possession of liquor or property designed for manufacture thereof; search warrants.* It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this chapter or which has been so used, and no property rights shall exist in any such liquor or property. A search warrant may issue as provided in sections 434 to 454, and 456 of Title 17, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may make thereof. If it is found that such liquor or property was so unlawfully held or possessed, or had been so unlawfully used, the liquor, and all property designed for the unlawful manufacture of liquor, shall be destroyed, unless the court shall otherwise order. *No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor,* or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house. The term 'private dwelling' shall be construed to include the room or rooms used and occupied not transiently but solely as a residence in an apartment house, hotel, or boarding house. The property seized on any such warrant shall not be taken from the officer seizing the same on any writ of replevin or other like process. (Oct. 28, 1919, c. 85, Title II, § 25, 41 Stat. 315)." Italics supplied. The affidavit here did not specifically allege that the premises to be searched, which was the defendant's dwelling, were being used directly for the sale of liquor, at least in the sense that liquor was being bought and paid for on the premises. What was alleged was that the premises were "being used as a storage and transfer point for untax-paid liquor." The facts stated in the affidavit afforded reasonable grounds for suspicion that retail deliveries of untax-paid liquor were being made by the defendant and his agents, from a larger stock, to customers at other locations; and on one occasion possibly directly to a customer on the premises. However, I think it may be assumed that the affidavit and the warrant based thereon are not sufficient to show

---

[1] There is authority to the effect that the statutory requirements as to the receipt and inventory are only ministerial and failure to comply therewith would not invalidate the warrant. Rose v. United States, 274 F. 245 (C.C.A.6), certiorari denied 257 U.S. 655, 42 S.Ct. 97, 66 L.Ed. 419; United States v. Kap-

lan (D.C.Ga.) 286 F. 963, 971; Reisgo v. United States, 285 F. 740 (C.C.A.5). See, also, Benton v. United States (C.C.A.) 70 F.(2d) 24, 26. Contra, Giles v. United States, 284 F. 208 (C.C.A.1); Murby v. United States, 293 F. 849 (C.C.A.1).

a compliance with the above italicized requirement of the section just quoted, if it was applicable law governing this particular search.

This question of statutory construction arises here in a novel form and, of course, grows out of the enactment of the Twenty-First Amendment to the Constitution effective December 5, 1933, which rendered unenforceable all congressional legislation which was founded on the Eighteenth Amendment prohibiting traffic in intoxicating liquors for beverage uses. Clearly section 39 of title 27 was enacted as a whole pursuant only to the authority of the Eighteenth Amendment. (See section 21 of title 3 of the National Prohibition Act, 41 Stat. p. 322). Equally clearly the penalties and punishments provided by section 39 for possession of intoxicating liquor as such were rendered unenforceable by the Twenty-First Amendment. United States v. Chambers and Gibson, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763, 89 A.L. R. 1510. But also clearly those provisions even of the National Prohibition Act which did not depend for their constitutional authority upon the Eighteenth Amendment were not ipso facto repealed by the Twenty-First Amendment. United States v. Mack, 295 U.S. 480, 55 S.Ct. 813, 79 L.Ed. 1559; Case v. Alderson, 76 F.(2d) 25 (C.C.A.4); United States v. U. S. Industrial Alcohol Co., 8 F.Supp. 179 (D.C.Md.) The narrow question is thus seen to be whether the particular sentence of section 39 prohibiting the search of a dwelling house unless used for the sale of intoxicating liquor can stand despite repeal of the penalties and punishments provided by the section for mere possession. It is said that this limitation as to search warrants for private dwellings was clearly within the power of Congress irrespective of the Eighteenth Amendment, and it would seem that this is so. But the question nevertheless remains whether the particular limitation on search warrants was not merely a subordinate and dependent portion of the section which necessarily fell with the withdrawal of constitutional support for the crimes and penalties created by the section.

It is here relevant to note that so far as congressional repeal is concerned the section with other portions of titles 1 and 2 of the National Prohibition Act were not repealed by Congress until the Act of August 27, 1935 (74th Congress, c. 740, § 1, 49 Stat. 872) which was subsequent to the date of the search in this case. Counsel for the respective parties draw different conclusions from this Act of Congress. In addition to repealing the whole of titles 1 and 2 of the National Prohibition Act, it separately enacted various provisions and penalties with regard to liquor (not dependent on the Eighteenth Amendment), and in certain cases specifically authorized the issuance of search warrants in accordance with the provisions of the Espionage Act relating thereto (18 U.S.C.A. § 613, etc.). The particular limitation of section 39 of title 27 U.S.C.A. with regard to search warrants for dwellings was not reenacted, and the repealing act contained no saving clause.

It is argued for the defendant that the express repeal by Congress shows that there were provisions of titles 1 and 2 of the National Prohibition Act which were not rendered inoperative by the Twenty-first Amendment, and that the limitation referred to was one of them, and therefore it remained effective to govern the search warrant in this case. On the other hand, it may be pointed out that the Act of 1935 contained no saving clause, and it may well be doubted if the rule of construction set up in U.S.C.A., title 1, § 29, with regard to continuing "penalty, forfeiture, or liability" is applicable here.

Nothing in the legislative history of the Act of 1935 has been called to my attention which indicates specifically that Congress thought the limitation of section 39 of title 27 remained operative after constitutional repeal.[2] And it is not without significance that the 1934 edition of

[2] In the Judiciary Committee Report accompanying the Bill (H.R. 8771), it was said:

"The major objectives of the bill are to make a clean sweep of the provisions of the National Prohibition Act which have primarily a prohibition purpose and to supplement title III of the act, which relates to industrial alcohol, with so much of the subsisting provisions of title II as will be of assistance in administering and enforcing title III.

"Although title I, which relates to wartime prohibition, in its entirety is probably temporary war legislation which expired with the termination of the war period, it is deemed desirable to repeal it specifically in order to obviate the possibility of a construction that any part of it is legislation permanent in char-

the United States Code, which is the official restatement of the laws in force January 3, 1935, did not retain section 39 of title 27, the notation with respect to section 39 and other omitted sections of chapter 2 of title 27, being that they were inoperative.[3]

For the defendant, attention is also called to the separability section of the National Prohibition Act, tit. 2, § 36 (title 27 U.S.C.A. § 64). This is not necessarily conclusive (See Hill v. Wallace, 259 U.S. 44, 71, 42 S.Ct. 453, 66 L.Ed. 822). The point of statutory construction here is whether the very nature of the subject matter of section 39 is such that the limitation of search was intended only as an adjunct to the enforcement of the laws against intoxicating liquors as such which depended for their authority on the Eighteenth Amendment, and therefore fell with its repeal. Virginia Coupon Cases (Poindexter v. Greenhow), 114 U.S. 270, 304, 5 S.Ct. 903, 29 L.Ed. 185; Sutherland, Stat. Const. (1891) § 174.

In my opinion the limitation in section 39 was wholly subordinate to the provision thereof which ·punished the mere possession of intoxicating liquor. It is to be noted that in this respect the National Prohibition Act, pursuant to the authority of the Eighteenth Amendment alone, created and punished a new crime. It also provided affirmatively that the enforcement of the law with respect to this new crime could be aided by the issuance of search warrants as provided under the Espionage Act but (probably as a result of the compromise of conflicting views and tendencies in legislation) limited the search of dwelling houses to cases where intoxicating liquor was being sold. It is unreasonable to infer that Congress would have impressed such limitation upon the search of dwelling houses except in connection with the establishment of the new and somewhat drastic criminal provision as to the mere possession of intoxicating liquors. I reach the conclusion that the limitation as to searches in section 39 did not survive National Prohibition Repeal.[4]

26 U.S.C.A. § 1502 (R.S. § 3462, as amended) provides generally for the issuance of search warrants "authorizing any internal revenue officer to search any premises * * * if such officer makes oath in writing that he has reason to believe, and does believe, that a fraud upon the revenue has been or is being committed upon or by the use of the said premises." R.S. § 3462, as amended (26 U.S.C.A. § 1502). It is this section which (as further limited by the sections of the Espionage Act relating to search warrants, and within the principles of the Fourth Amendment—see Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159) the Government in this case contends, and I think rightly, governs this particular case.

The several motions of the defendant to strike out the evidence obtained under the search warrant, to rule as a matter of law that it was invalid, and to direct a verdict for the defendant, are denied.

---

acter. Many of the provisions of title II have fallen with the repeal of the eighteenth amendment, but there remain a number which yet retain vitality as revenue measures. Some of the latter are vital in the administration and enforcement of title III, and have consequently been retained in the bill. Title III is subsisting legislation despite repeal, Helvering v. Druggists' Specialties Co., Inc. (C.C.A. 3d Circ., Mar. 25, 1935, 76 F.(2d) 743). Its provisions relate to the production and disposition of industrial alcohol, including denatured alcohol, and constitute an essential revenue measure. It should be noted that similar provisions antedated the prohibition laws and required no constitutional amendment for their vitality.

"The bill also contains a much-needed provision for the use by governmental agencies of property seized and forfeited for violation of the laws of the United States."

[3] "This Chapter in large measure became inoperative by adoption of the 21st Amendment to the Constitution. Its operative sections are omitted from the Code, and the text of only such sections as may be still in force in whole or in part is retained."

[4] During the National Prohibition Era it was held in United States v. Richards, 22 F.(2d) 998 (D.C.Mass.) and United States v. Kordos, 13 F.(2d) 905 (D.C. Pa.), the limitation applied also to searches for illicit liquor under the internal revenue laws, but I do not regard these cases as applicable to the present situation. In United States v. Jakems (D.C.Mich.) 12 F.Supp. 227, a prosecution for violation of the internal revenue laws, it was apparently assumed that the limitation on search contained in section 39 was rendered inoperative by the Twenty-First Amendment.