## UNITED STATES v. 3935 CASES OF DISTILLED SPIRITS.

### Civil Action No. 1065.

District Court, D. Minnesota,
Fourth Division.

April 12, 1944.

McMeekin & Quinn, of St. Paul, Minn., for claimant.

Wm. P. Murphy, Asst. U. S. Atty., of St. Paul, Minn., for libelant.

JOYCE, District Judge.

It is alleged by the Government that the owners of the seized property, who were licensed to do business as retailers, violated the Internal Revenue laws by engaging in business as wholesalers without payment of the wholesale dealers occupational tax required by Section 3253 of Title 26 U.S.C.A. Int.Rev.Code; without making the reports required to be kept by wholesale liquor dealers pursuant to the provisions of Section 2857 of Title 26 U.S.C.A. Int.Rev.Code, or without securing a basic permit to purchase distilled spirits for resale at wholesale as required by the Federal Alcohol Administration Act of August 29, 1935, as amended, 27 U.S.C.A. § 203.

The Government bases its authority for the seizure on Section 3116 of Title 26 U.S.C.A. Int.Rev.Code, which provides as follows:

"It shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this part, or the internal-revenue laws, or regulations prescribed under such part or laws, or which has been so used, and no property rights shall exist in any such liquor or property. A search warrant may issue as provided in title XI of the Act of June 15, 1917, 40 Stat. 228 (U.S.C., Title 18, §§ 611-633), for the seizure of such liquor or property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal-revenue laws, or of any other law. The seizure and forfeiture of any liquor or property under the provisions of this part, and the disposition of such liquor or property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such liquor or property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal-revenue laws."

The claimants herein seek return of the goods and equipment seized, contending that the libel of the Government cannot be sustained under Section 3116 for the reason that that act was not intended to include all violations of the internal revenue laws but is limited to violations involving industrial alcohol, none of which is involved in this libel. So that in the final analysis the problem is one of determining the meaning and intent of Section 3116.

It is of course well settled that where a question arises as to the meaning of a statute, it is resolved by determining what was the Congressional intent. At the outset, then, the question is: Did Congress

intend that Section 3116 should apply only to violations of industrial alcohol statutes?

With the repeal of the Eighteenth Amendment many of the provisions of Title II of the National Prohibition Act, 27 U.S.C.A. §§ 1, 4 et seq., had fallen, but there remained a number which retained vitality as revenue laws, some of which were vital in enforcement of Title III of the National Prohibition Act, 27 U.S.C.A. § 71 et seq., relating to industrial alcohol, which title did not fall with the repeal of the Eighteenth Amendment. Its provisions constituted an essential revenue measure, having followed similar provisions ante-dating the prohibition laws and requiring no constitutional amendment for their vitality. Section 25 of Title II of the National Prohibition Act provided that it was unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use or which had been used in violating Title II. It also provided for seizure and forfeiture of the liquor and property. When Title II of the National Prohibition Act was repealed, this provision of course fell and the only provisions for the seizure and forfeiture were, then, the less inclusive provisions of the internal revenue laws. United States v. Zager, D.C., 14 F.Supp. 23. On August 27, 1935, the Liquor Law Repeal and Enforcement Act, 49 Stat. 872, was enacted. Section 8 of that law was modeled after Section 25 of Title II of the National Prohibition Act. When it was reported to the House by the committee on the judiciary, Mr. Duffy, speaking for the committee, explained the purpose and intent of Section 8 as follows:

"Section 8 is modeled after section 25 of title II, which made it unlawful to have or possess any liquor, or property designed for the manufacture of liquor, intended for use in violating title II, or which had been so used, and providing for the destruction thereof unless the court should otherwise order. Search warrants were to be issued as provided in title XI of the so-called 'Espionage Act' (18 U.S.C.A. secs. 611-633), which prescribes the authority to issue search warrants; the grounds and conditions thereof, etc. Section 9 [sic] extends this provision by making it unlawful to have or possess any liquor or property used or intended for use, in violating the provisions of this title of the bill, or of title III, or of the internal-revenue laws or of regulations promulgated thereunder.

This extension bridges a gap now existing in the internal-revenue laws and in title III with regard to the seizure of property intended for use in violating the designated laws."

And on August 15, 1935, Mr. V. Simonton, a Treasury Department representative who had to do with the drafting of Section 8, explained its purpose and intent to the Senate Committee on the Judiciary as follows:

"The old act read, in section 25: it shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this title.

"We have extended that to include the possession of liquor or property intended for use in violating the provisions of title III of the National Prohibition Act and of the internal-revenue laws. For the first time we have proposed legislation condemning an attempt to violate the internal-revenue laws. At the present time it is not an offense against the United States to attempt to violate the internal-revenue laws. It is a conspiracy, of course, but an attempt to do so is not strictly a violation of the law."

These reports plainly and unequivocally refer to the internal-revenue laws generally and are not confined to those which have to do with industrial alcohol. Considering the reports and the status of both Title III and the internal-revenue laws prior to the enactment of Section 8 (now Section 3116), it seems clear that Congress meant just what it plainly said—that "internal-revenue laws", and not merely internal-revenue laws governing industrial alcohol, should be within the provisions of Section 8.

While it is true that in the codification in 1939 of the internal-revenue laws Section 3116 was placed in the code among other sections devoted to matters pertaining to industrial alcohol, the act of the codification editor cannot change the intent of Congress when it enacted the law. Significantly, after 3116 was enacted on August 27, 1935, as section 8 of the Liquor Law Repeal and Enforcement Act, it was made a part of the statutes which dealt with intoxicating liquors. See 27 U.S.C. § 157 from 1935 to 1939.

Moreover, a plain and literal interpretation of the section does not limit its application to industrial alcohol statutes, as claimant argues. Section 3116 says that no property rights shall exist in any liquor

or property which is intended for use in violating the provisions of (1) "this part", or (2) "the internal-revenue laws", or (3) "regulations prescribed under such part or laws", or (4) property or liquor "which has been so used". The phrase "this part", and "regulations prescribed under such part", of course refer to the part in which Section 3116 appears in U.S.C.A. and the statutes, and such "part" pertains to industrial alcohol. The phrase "internal-revenue laws" and "regulations prescribed under such * * * laws" of course refer to internal-revenue laws, and since no qualification is made to the effect that only *some* internal-revenue laws are meant, the plain and literal meaning of the section is that the violation or the intended violation of *any* valid internal-revenue law or regulation gives rise to operation of Section 3116.

In construing this statute I am guided by the rule enunciated by the Supreme Court in United States v. Hartwell, 6 Wall. 385, 395, 73 U.S. 385, 18 L.Ed. 830, which reads:

"The object in construing penal, as well as other statutes, is to ascertain the legislative intent. That constitutes the law. If the language be clear it is conclusive. There can be no construction where there is nothing to construe. The words must not be narrowed to the exclusion of what the legislature intended * * * and they must be such as to leave no room for a reasonable doubt upon the subject. It must not be defeated by a forced and over-strict construction. The rule does not exclude the application of common sense to the terms made use of in the act in order to avoid an absurdity, which the legislature ought not to be presumed to have intended. When the words are general and include various classes of persons, there is no authority which would justify the court in restricting them to one class and excluding others, where the purpose of the statute is alike applicable to all. The proper course in all cases is to adopt that sense of the words which best harmonizes with the context, and promotes in the fullest manner the policy and objects of the legislature. The rule of strict construction is not violated by permitting the words of the statute to have their full meaning, or the more extended of two meanings, as the wider popular instead of the more narrow technical one; but the words should be taken in such a sense, bent neither one way nor the other, as will best manifest the legislative intent. United States v. Wiltberger, 5 Wheat. [76], 96 [5 L.Ed. 37]; United States v. Morris, 14 P. [464], 475 [10 L.Ed. 543]; United States v. Winn, [Fed. Cas. No. 16,740], 3 Sumn. 209, 211; 1 Bishop's Criminal Law, § 123; Bacon Abridgement tit. Statute, I."

Claimant submits that the penalty resulting from the forfeiture is severe in view of the offenses committed. Whether or not that penalty is justified is not a matter for the courts but for Congress, the branch of the Government which enacted the law. Realistically viewed, however, the opportunity created for unrestricted sales of wholesale unrecorded quantities of liquor by failure to conform to the provisions of the statutes involved might be justification for the seemingly drastic features of the enactment.