**UNITED STATES v. CROSSTOWN LIQ-
UOR MART, Inc., et al.**

No. 49 C.R. 390.

United States District Court
N. D. Illinois, E. D.

Jan. 10, 1950.

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., for plaintiff.

Maurice J. Walsh, Chicago, Ill., for defendants.

CAMPBELL, District Judge.

On July 11, 1949, two search warrants were executed on the premises of the Crosstown Liquor Mart in the City of Chicago. 409 cases of liquor (distilled spirits) were seized under one warrant, and a 1948 Pontiac automobile, the property of Sol M. Dunner, the president of the corporation, was seized under another warrant on a public street in front of the premises of the Crosstown Liquor Mart. On July 29, 1949, an indictment was returned charging the present defendants with violations of the Internal Revenue Laws, specifically those relating to the carrying on of the business of a wholesale liquor dealer without having paid the special tax required by law.

The defendants moved for return of the property and suppression as evidence of all property and papers seized under authority of the search warrants. A hearing was had on the motion, after which the matter was taken upon the briefs of the parties.

The defendants set forth three principal contentions in support of their position: (a) "The sales which are the subject of the applications for warrants in the case at bar and the surrounding circumstances do not constitute a violation of Section 3253, Title 26 U.S.C.A., that is, carrying on the business of a Wholesale Liquor Dealer with willful failure to pay the special tax"; (b) "The search warrants are insufficient on their faces, and the warrants were illegally executed by reason of seizure of property not described in the warrant and by seizure of property not located on the premises ordered searched"; (c) "There is no provision in law for the seizure of the tax paid property of a wholesale liquor dealer for failure to pay the special tax as such dealer".

■ The defendants' motion to suppress must be denied. In order to justify the issuance of the search warrants, it was not necessary that the accompanying affidavits disclose that the Investigator for the Alcohol Tax Unit was accompanied by another person when the alleged sales occurred. He stated under oath that liquor was offered for sale and that it was sold to him in quantities such as would constitute wholesale transactions within the meaning of the Internal Revenue Code. From this the Commissioner could logically conclude that defendants were carrying on the business of a wholesale liquor dealer. Nor was it necessary that Crosstown should have been described in the affidavits as a licensed retail liquor dealer. The fact that it was so licensed would not deter the Commissioner from issuing the warrants upon a charge that a wholesale liquor business was being carried on. In any event, defendants' argument on this point is specious, since the warrants do describe Crosstown as a retail liquor dealer.

■ Furthermore, insofar as the sufficiency of the affidavits was concerned, it made no difference that at all times, as defendants contend, any liquor and records were available for inspection and, hence, were not concealed. The essential element is that, although the liquor was being held ostensibly to replenish retail stocks, it was used for the purpose of carrying on the business of a wholesale liquor dealer without paying the special tax therefor, and without fulfilling other requirements of law.

In view of the contradictory testimony of the Revenue Agents and defendant Dunner, it cannot be determined as a matter of law that the sales in question were to two persons rather than only one, or that defendants did not willfully fail to pay the special tax. Those questions must be decided by the jury and cannot be disposed of upon the motion now before the Court.

■ Defendants' next contention, i. e., that the property to be seized was inadequately described, is unsupportable. The warrant contains the following language: "Affidavit having been made before me by James W. Lavely, Investigator, Alcohol Tax Unit that he has reason to believe that on the premises known as * * * in the Northern District of Illinois there is now

being concealed certain property, namely taxpaid distilled spirits and containers, intended for use in violating the provisions of the internal revenue laws * * *." The command of the warrant is that the officers search the premises for the "property specified". Defendants contend, therefore, that it was left to the extra-judicial decision of the officers to determine which of the distilled spirits should be seized in view of the language "intended for use in violating the provisions of the internal revenue laws". However, this latter language is merely an averment of the grounds for the issuance of the warrant, and is included so as to conform to the dictates of Rule 41(b) (2) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. The "property specified" in the command of the warrant is, therefore, the "taxpaid distilled spirits and containers". That the latter is a sufficient description of the property to be seized is confirmed by the United States Supreme Court in the case of Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 416, 69 L.Ed. 757: "Then it is said that the property seized was not sufficiently indentified in the warrant. It was described as 'cases of whisky,' and while there is no evidence specifically identifying the particular cases which were seized as those which Einstein saw, the description as 'cases of whisky' is quite specific enough. (Citing cases)."

Nor does it appear that defendants have any cause for complaint on the ground that the agents seized only the liquor in cases and left the liquor on the shelves undisturbed.

Insofar as the siezure of the automobile is concerned, defendants contend that the command of the warrant was to search the premises of the Crosstown Liquor Mart for the automobile, whereas, in fact, it was seized on a public highway. The place was actually described in the warrant as "on or about the premises known as Crosstown Liquor Mart, Inc." Under such a description, it was permissible to seize the automobile located in front of the liquor store.

Defendants' remaining contention, i. e., that there is no provision in law for the forfeiture of property for failure to pay the wholesaler's special tax, is untenable in view of the judicial interpretations of the forfeiture provisions of the Internal Revenue Code. The applicable sections of the Code are:

Section 3253—"Penalties and forfeitures for nonpayment of special Tax

"Any person who shall carry on the business of a brewer, rectifier, wholesale liquor dealer, retail liquor dealer, wholesale dealer in malt liquors, retail dealer in malt liquors, or manufacturer of stills, and willfully fails to pay the special tax as required by law, shall, for every such offense, be fined not less than $100 nor more than $5,000 and be imprisoned for not less than thirty days nor more than two years. And all distilled spirits or wines, and all stills or other apparatus, fit or intended to be used for the distillation or rectification of spirits, or for the compounding of liquors, owned by such person, wherever found, and all distilled spirits or wines and personal property found in the distillery or rectifying establishment, or in any building, room, yard or enclosure connected therewith and used with or constituting a part of the premises, shall be forfeited to the United States."

Manifestly, this section authorizes three modes of punishment for failure to pay the special tax: fine, imprisonment and forfeiture of property. This conclusion is borne out in the case of Seib v. United States, 8 Cir., 150 F.2d 673, 675, where a similar contention was made: "The section is entitled 'Penalties and forfeitures for nonpayment of special tax.' Apparently, the appellant interprets the section to authorize only fine and imprisonment for engaging in the business of a wholesale liquor dealer without having paid the special tax on wholesalers, and to provide for forfeitures only such distilled spirits 'fit or intended to be used for the distillation or rectification of spirits' by one engaged as a rectifier without having paid the special tax required to rectifiers. We do not agree with this interpretation. We think the section expresses the intent of Congress to provide for the forfeiture of distilled spirits in the possession of one engaged as a

wholesale liquor dealer without having paid the special tax required by the Revenue Laws of the United States, as well as for the forfeiture of such liquors in the hands of rectifiers who have failed to pay the special tax imposed upon them. * * *".

In any event, however, the liquor in question here is forfeitable under Section 3116 of the Internal Revenue Code, 26 U.S.C.A. § 3116:

Section 3116—"Forfeitures and Seizures

"It shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this part, or the internal-revenue laws, or regulations prescribed under such part or laws, or which has been so used, and no property rights shall exist in any such liquor or property. A search warrant may issue as provided in title XI of the Act of June 15, 1917, 40 Stat. 228 (U.S.C., Title 18, §§ 611–633), for the seizure of such liquor or property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal-revenue laws, or of any other law. The seizure and forfeiture of any liquor or property under the provisions of this part, and the disposition of such liquor or property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such liquor or property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal-revenue laws."

Defendants assert that, since this section is contained in the chapter entitled "Industrial Alcohol Plants", its forfeiture provisions were not intended to be made applicable to a case where a person merely fails to pay the special tax required for wholesale liquor transactions. The identical issue has been presented to various courts in the past, and the result has been unanimously in favor of the Government's position. The subject was treated thoroughly in the case of United States v. 3935 Cases of Distilled Spirits, D.C., 55 F.Supp. 84:

"It is of course well settled that where a question arises as to the meaning of a statute, it is resolved by determining what was the Congressional intent. At the outset, then, the question is: Did Congress intend that Section 3116 should apply only to violations of industrial alcohol Statutes?

"With the repeal of the Eighteenth Amendment many of the provisions of Title II of the National Prohibition Act, 27 U.S.C.A. §§ 1, 4 et seq., had fallen, but there remained a number which retained vitality as revenue laws, some of which were vital in enforcement of Title III of the National Prohibition Act, 27 U.S.C.A. § 71 et seq., relating to industrial alcohol, which title did not fall with the repeal of the Eighteenth Amendment. Its provisions constituted an essential revenue measure, having followed similar provisions antedating the prohibition laws and requiring no constitutional amendment for their vitality. Section 25 of Title II of the National Prohibition Act provided that it was unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use or which had been used in violating Title II. It also provided for seizure and forfeiture of the liquor and property. When Title II of the National Prohibition Act was repealed, this provision of course fell and the only provisions for the seizure and forfeiture were, then, the less inclusive provisions of the internal revenue laws. United States v. Zager, D.C., 14 F.Supp. 23. On August 27, 1935, the Liquor Law Repeal and Enforcement Act, 49 Stat. 872, was enacted. Section 8 of that law was modeled after Section 25 of Title II of the National Prohibition Act. When it was reported to the House by the Committee of the judiciary, Mr. Duffy, speaking for the committee, explained the purpose and intent of Section 8 as follows:

" 'Section 8 is modeled after section 25 of Title II, which made it unlawful to have or possess any liquor, or property designed for the manufacture of liquor, intended for use in violating title II, or which had been so used, and providing for the destruction thereof unless the court should otherwise

order. Search warrants were to be issued as provided in Title XI of the so-called "Espionage Act" (18 U.S.C.A. secs. 611–633), which prescribes the authority to issue search warrants; the grounds and conditions thereof, etc. Section 9 [sic] extends this provision by making it unlawful to have or possess any liquor or property used or intended for use, in violating the provisions of this title of the bill, or of title III, or of the internal-revenue laws or of regulations promulgated thereunder. This extension bridges a gap now existing in the internal-revenue laws and in title III with regard to the seizure of property intended for use in violating the designated laws.'

"And on August 15, 1935, Mr. V. Simonton, a Treasury Department representative who had to do with the drafting of Section 8, explained its purpose and intent to the Senate Committee on the Judiciary as follows:

" 'The old act read, in section 25; it shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this title.'

" 'We have extended that to include the possession of liquor or property intended for use in violating the provisions of title III of the National Prohibition Act and of the internal-revenue laws. For the first time we have proposed legislation condemning an attempt to violate the internal-revenue laws. At the present time it is not an offense against the United States to attempt to violate the internal-revenue laws. It is a conspiracy, of course, but an attempt to do so is not strictly a violation of the law.'

"These reports plainly and unequivocally refer to the internal-revenue laws generally and are not confined to those which have to do with industrial alcohol. Considering the reports and the status of both Title III and the internal-revenue laws prior to the enactment of Section 8 (now Section 3116), it seems clear that Congress meant just what it said—that 'internal-revenue laws', and not merely internal-revenue laws governing industrial alcohol, should be within the provisions of Section 8.

"While it is true that in the codification in 1939 of the internal-revenue laws Section 3116 was placed in the code among other sections devoted to matters pertaining to industrial alcohol, the act of the codification editor cannot change the intent of Congress when it enacted the law. Significantly, after 3116 was enacted on August 27, 1935, as section 8 of the Liquor Law Repeal and Enforcement Act, it was made a part of the statutes which dealt with intoxicating liquors. See 27 U.S.C. § 157 from 1935 to 1939.

"Moreover, a plain and literal interpretation of the section does not limit its application to industrial alcohol statutes, as claimant argues. Section 3116 says that no property rights shall exist in any liquor or property which is intended for use in violating the provisions of (1) 'this part', or (2) 'the internal-revenue laws', or (3) 'regulations prescribed under such part or laws' or (4) property or liquor 'which has been so used'. The phrase 'this part', and 'regulations prescribed under such part', of course refer to the part in which Section 3116 appears in U.S.C.A. and the statutes, and such 'part' pertains to industrial alcohol. The phrase 'internal-revenue laws' and 'regulations prescribed under such * * * laws' of course refer to internal-revenue laws, and since no qualification is made to the effect that only some internal-revenue laws are meant, the plain and literal meaning of the section is that the violation or the intended violation of any valid internal-revenue law or regulation gives rise to operation of Section 3116."

This result is confirmed in the following cases: U. S. v. One 1942 Pontiac Sedan, D.C.Ill., 56 F.Supp. 929; U. S. v. 673 Cases of Distilled Spirits and Wines, D.C.Minn., 74 F.Supp. 622; Seib v. U. S., 8 Cir., 150 F.2d 673; U. S. v. Windle, 8 Cir., 158 F.2d 196; One 1941 Buick Sedan v. U. S., 10 Cir., 158 F.2d 445; One Ford Tudor Automobile, 1946 Model v. U. S., 5 Cir., 164 F.2d 1020.

The case of U. S. v. One 1940 Oldsmobile Sedan, 167 F.2d 404, 405, decided by the Court of Appeals of this circuit not only confirms the views of the above-cited

decisions, but goes further to emphasize that the disproportion between the amount of the tax and the value of the goods seized will not vitiate the forfeiture, and that the Court is not empowered to order a return of the property because of such disproportion: "We are here materially concerned only with the forfeiture statutes, 26 U.S.C.A.Int.Rev.Code, §§ 2803 and 3116, which relate to distilled spirits. This action is against the impersonal automobile alone, and its alleged owner, Coleman, is not a party to it. The auto was charged in this civil action with having been the means of illegally transporting a quantity of distilled spirits upon which no internal revenue taxes had been paid. True, the owner of the spirits or the automobile might have legally secured a one cent revenue stamp and placed it upon the receptacle, as provided by the statute, which would have indicated full payment of all internal revenue taxes due, but this was not done. Much is said about the insignificant value of one cent, as compared to the severity of the forfeiture. However, neither the owner of the spirits nor the automobile could have rightfully secured or used the one cent stamp without having paid all the internal revenue taxes due thereon. Hence, it is manifestly unfair to say that the amount here involved is trivial. In any event Congress did not think it was trivial, and we are bound by their enactment. We think the District Court was without discretion to decide otherwise."

From the foregoing cases, it would further appear that the forfeiture in the case at bar should not be restricted to the brands purchased by the Investigator of the Alcohol Tax Unit. The forfeiture sections are preventive and, if wholesale transactions actually occurred, it is reasonable to assume that they would not be confined to certain named brands.

Although this Court must concur in the foregoing judicial interpretations of the applicable forfeiture sections, it wishes to state that the arbitrary use of the principle of forfeiture as a revenue measure in a case such as this creates a grave injustice. Assuming, for the sake of argument, that the defendants are guilty of the charges of the indictment, the fine or imprisonment authorized under Section 3253 should certainly be sufficient inducement for them to pay the wholesaler's special tax. (As a matter of fact, the defendants have paid the tax since the indictment was returned.) It appears totally unnecessary and unjust for the Government virtually to put these defendants out of business by confiscating some $20,000 worth of personal property merely for failure to pay a tax amounting to only $110. Had the defendants actively defrauded the Government of substantial sums of money over a period of years by failing to report income from this same enterprise, they could not, by law, suffer such a stringent penalty. The seizure of this considerable amount of property does not commend the responsible governmental agency as the protector of the public welfare. On the contrary, this act of confiscation impresses the Court as being vindictive rather than preventive. It is with great reluctance, therefore, that the Court must accede to the dictates of a law that permits such a seizure as this.

Defendants' motion to suppress is hereby denied.