UNITED STATES *v.* MACK ET AL.

No. 693.   Argued May 1, 2, 1935.—Decided May 20, 1935.

---

*Assistant to the Attorney General Stanley,* with whom *Solicitor General Reed* and *Messrs. Alexander Holtzoff* and *Carl McFarland* were on the brief, for the United States.

*Mr. Louis Halle,* with whom *Mr. Milton R. Kroopf* was on the brief, for respondents.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

On July 31, 1930, an American motor boat, the Wanda, had on board a cargo of intoxicating liquors. The Collector of the Port of New York seized the vessel and arrested the crew for an offense against the National Prohibition Act. Thereupon the respondent Mack claiming to be the owner of the vessel gave a bond as principal with the other respondent as surety in the sum of $2,200, double the value of the vessel, conditioned that the bond should be void if the vessel was returned to the custody of the Collector on the day of the criminal trial to abide

482

the judgment of the court. A copy of the bond is printed in the margin.[1] The members of the crew were brought to

[1] "Know all men by these presents, that I, James A. Mack, of No. 4 Hickory Street, Wantagh, Long Island, N. Y., principal and Concord Casualty and Surety Company, of No. 60 John Street, New York City, a corporation, organized and existing under laws of New York State, surety, are held and firmly bound unto the United States of America in the penal sum of two thousand two hundred and 00/100 ($2,200.00) dollars (double the value of the vehicle or conveyance), money of the United States, for the payment of which well and truly to be made we bind ourselves jointly and severally, our heirs, executors, administrators, successors, and assigns firmly by these presents.

" Whereas, the following described vehicle or conveyance has been seized pursuant to section 26 of title II of the National Prohibition Act, to wit: The American motor boat ' Wanda.'

"And, whereas, the aforesaid principal has made application for the return of said vehicle or conveyance, claiming to be the owner thereof:

" Now, therefore, the condition of this obligation or bond is such, that if the said principal shall return the aforesaid conveyance or vehicle to the custody of the officer approving this bond on the day of the criminal trial to abide the judgment of the court; and, in case the said property shall be forfeited to the United States, or the court shall order a sale of said conveyance or vehicle, that if the said principal shall pay the difference between the value of said vehicle or conveyance at the time of the execution hereof, which is hereby stipulated to be one-half of the penal sum of this bond, and its value on the date of its return as aforesaid, less depreciation due to reasonable wear and tear of ordinary use, and the said principal shall pay off any liens or encumbrances thereon except the following liens heretofore existing, namely: then this obligation to be void, otherwise to remain in full force and effect.

" Witness our hands and seals this 31st day of October 1930;

By JAMES A. MACK,
*Principal Concord Casualty and Surety Company.*
By JOHN A. MANNING,
*Resident Vice President.*
FRED M. NIELSEN,
"Attest: *Attorney in fact.*
"Approved this 1st day of November 1930.
H. C. STUART, *Assistant Collector.*"

trial on January 26, 1931, and upon a plea of guilty were sentenced. The vessel, however, was not returned by the owner, either then or at any other time, to the custody of the collector. Accordingly, on July 19, 1933, the United States of America filed its complaint against principal and surety to recover upon the bond, claiming $1,100, the value of the vessel, with interest from the date of the breach of the condition. A motion to dismiss the complaint was made in April, 1934, the defendants contending that through the repeal of the Eighteenth Amendment on December 5, 1933, liability on the bond had ended. The motion was granted by the District Court, 6 F. Supp. 839, and the Court of Appeals for the Second Circuit affirmed. 73 F. (2d) 265. A writ of certiorari brings the case here.

Penalties and forfeitures imposed by the National Prohibition Act for offenses committed within the territorial limits of a state fell with the adoption of the Twenty-first Amendment. *United States* v. *Chambers,* 291 U. S. 217. Our holding to that effect was confined to criminal liabilities, and had its genesis in an ancient rule. On the other hand, contractual liabilities connected with the Act continued to be enforcible with undiminished obligation, unless conditioned by their tenor, either expressly or otherwise, upon forfeitures or penalties frustrated by the Amendment. The courts below have held that liability upon the bond in suit was conditioned by implication upon the possibility in law of subjecting the delinquent vessel to forfeiture and sale, and that the possibility must be unbroken down to the recovery of judgment against the delinquent obligors. In opposition to that holding the Government contends that the bond is a contract to be enforced according to its terms; that liability became complete upon the breach of the express condition for the return of the delinquent vessel; and that the liability thus perfected was not extinguished or diminished by the

loss of penal sanctions. We think the Government is right.

By the provisions of the Prohibition Act an officer who seizes a vessel or other conveyance transporting intoxicating liquors must deliver it to the owner upon the execution of " a good and valid bond, with sufficient sureties, in a sum double the value of the property," to be approved by the officer and to be " conditioned to return said property to the custody of said officer on the day of trial to abide the judgment of the court." National Prohibition Act, c. 85, 41 Stat. 305, 315, § 26; 27 U. S. C. § 40. No other condition is expressed in the statute. No other, we think, is to be implied. One of the essentials of jurisdiction *in rem* is that the thing shall be " actually or constructively within the reach of the court." *The Brig Ann*, 9 Cranch 289, 291; and see *Miller* v. *United States*, 11 Wall. 268, 294; *Strong* v. *United States*, 46 F. (2d) 257, 260. If the defendants had lived up to the requirements of the bond, the court would have been in a position after the plea of guilty by the crew to proceed against the vessel forthwith and in a summary way. *The Harbour Trader*, 42 F. (2d) 858. Without the presence of the vessel that opportunity would be lost. To give assurance that it would not be lost the bond was exacted by the statute and delivered by the owner. In the face of all this the argument is pressed that delay has extin-. guished the remedy on the bond by putting an end to the possibility of going against the boat. Thus the obligation is destroyed by force of the very contingency against which it was designed to give protection. We find no adequate reason for thus rewarding an offender. If the condition had not been broken, the Government would have received the value of the vessel, or at least that result would have ensued for anything to the contrary shown in this record. Principal and surety covenanted that in

the event of such a default the bond should become payable according to its terms. They must be held to their engagement. Cf. *United States* v. *John Barth Co.,* 279 U. S. 370; *Gulf States Steel Co.* v. *United States,* 287 U. S. 32; *United States* v. *Hodson,* 10 Wall. 395, 409; *Daniels* v. *Tearney,* 102 U. S. 415.

We have said that the bond may not be read by a process of construction as subject to conditions not expressed upon its face. In saying that we have no thought to pass upon the quantum of a recovery thereunder. There are decisions of other courts to the effect that the bond is one of indemnity, so that only the damages actually suffered by the omission to produce the boat for surrender at the appointed time will be owing upon default. See *United States* v. *Warnell,* 67 F. (2d) 831, 832; *United States* v. *Randall,* 58 F. (2d) 193, 194; cf. *United States* v. *Zerbey,* 271 U. S. 332, 340. If that is so, there is always the possibility of proving in mitigation or defense that the boat and those in charge of her were innocent, and hence there was no loss. We leave those questions open. It is one thing to show that if the boat had been on hand at the appointed time, no benefit to the Government would have resulted from her presence. Cf. *Taylor* v. *Taintor,* 16 Wall. 366, 369. It is quite another thing to show that there was damage at the date of breach, and damage for which the Government would have a remedy if the boat had been produced, but that owing to changed circumstances it would be useless to produce her now. Neither in the bond nor in the statute is there a disclosure of a willingness that the principal shall be thus permitted to take advantage of his wrong.

We are told that the bond is only a substitute for the vessel and hence is not enforceable unless there could be a decree *in rem* if the vessel were in court today. To speak of the bond as such a substitute is only a half truth. Un-

doubtedly the reason for the exaction of the bond was to put the Government in as good a position as it would have occupied if the *res* had been present at the time of the criminal trial, but this is far from saying that liability was meant to be conditioned upon control of the *res* thereafter as a continuing possibility. A bond such as this one has very little analogy to a form of bond common in the admiralty whereby the stipulators become bound to " pay the amount awarded by the final decree." Cf. *The Belgenland,* 108 U. S. 153; *The City of Norwich,* 118 U. S. 468, 489. Upon a bond so conditioned the liability of the stipulators is inchoate until perfected by a decree for the disposition of the *res* or of the proceeds of the bond accepted as a substitute. Here, on the contrary, the remedy is at law by an action on a contract, and not *in rem* or *quasi in rem* as if a suit had been brought in admiralty or in equity. The existence or non-existence of a cause of action at law growing out of a civil liability having its origin in contract is commonly dependent upon the state of facts existing when the action was begun. There is nothing to bring this case within any recognized exception.

Both sides make much of the analogy supplied by the responsibility of bail. The analogy exists, though it is far from being complete. Its implications give support on the whole to the position of the Government. At common law bail might be exonerated as of right by the surrender of their principal if their liability had not yet been " fixed." There was much learned disquisition as to the time when that event occurred. To avoid confusion of thought a distinction must be drawn between civil and criminal cases, for the function of bail in each is essentially diverse. *United States* v. *Ryder,* 110 U. S. 729, 736.

The rule in civil cases was that bail were not liable until a return of *non est inventus* to a *ca. sa.* against the

principal. *Cholmley* v. *Veal,* 6 Mod. 304; *Bernard* v. *McKenna,* 3 Fed. Cas., No. 1348; *Pearsall* v. *Lawrence,* 3 Johns. 514; 1 Tidd's Practice, 237, 238.[2] Upon such return liability was fixed, but not definitively and beyond remission. A first writ of *scire facias* must have issued, and in certain contingencies an *alias* writ, before the bail were to be cast in judgment. *Kirk* v. *United States,* 137 Fed. 753, 755; *McCombs* v. *Feeter,* 1 Wend. 19; *Cumming* v. *Eden,* 1 Cow. 70; 2 Tidd's Practice, 1038, 1039, 1040. By the indulgence of the court they might surrender the principal until the return day of the last writ, after which their liability became definitive and absolute. *Mannin* v. *Partridge,* 14 East 599, 600; *Beers* v. *Haughton,* 9 Pet. 329, 358. But remission of liability, even within those limits, was matter of indulgence only. 1 Tidd's Practice, 238, 239; 2 *id.,* 1044. " To many purposes, the bail is considered as fixed by the return of the *ca. sa.*" Marshall, Ch. J., in *Davidson* v. *Taylor,* 12 Wheat. 604. If surrender was allowable thereafter the privilege was given " as matter of favour, and not as matter pleadable in bar." *Ibid.* The court would exercise a sound discretion. *Morsell* v. *Hall,* 13 How. 212, 215. Accordingly the practice was to treat the liability as absolute if the situation had so changed that the bail were no longer able to make an effectual surrender, as where before the return of the *scire facias* the principal had died. "All the cases agree, that after the bail are fixed, *de jure,* they take the risk of the death of the principal. . . . The time which is allowed the bail, *ex gratia,* is at their peril, and they must surrender." Kent, Ch. J., in *Olcott* v. *Lilly,* 4 Johns. 407, 408. " In such a case the bail is considered as fixed by the

---

[2] ". . . the reason of it is, that I am not bound to render the principal till I know what execution the plaintiff will chuse; whether he will chuse to have his body, which he makes appear by suing a *capias;* for he might have sued an *elegit* or *fi'. fa'.*" Holt, Ch. J., in *Cholmley* v. *Veal, supra,* at p. 305.

return of the *ca. sa.*, and his [the principal's] death afterwards, and before the return of the *scire facias,* does not entitle the bail to an *exoneretur." Davidson* v. *Taylor, supra.* Cf. *United States* v. *Costello,* 47 F. (2d) 684, 686; *Detroit Fidelity & Surety Co.* v. *United States,* 59 F. (2d) 565, 568; 2 Tidd's Practice, 1044. To follow this analogy through in its application to the case at hand: the respondents are no longer able by a surrender of the vessel to neutralize the consequences flowing from their default. Surrender after condition broken was never a strict defense. It has ceased in the present circumstances to commend the offenders to favor and indulgence. The forfeiture must stand.

If from civil cases we pass to criminal, the argument from analogy becomes even weaker for the respondents, and stronger for the Government. No longer is there need for a return to a *ca. sa.* The bail are bound at once upon the principal's default. " If the condition of the bail bond is broken by the failure of the principal to appear, the sureties become the absolute debtors of the United States for the amount of the penalty." *United States* v. *Zarafonitis,* 150 Fed. 97, 99; *United States* v. *Van Fossen,* 28 Fed. Cas., No. 16,607, at p. 358; *People* v. *Anable,* 7 Hill (N. Y.) 33. Collection may be enforced either by *scire facias* in the court which has possession of the record or by an ordinary suit in any other court of competent jurisdiction. *United States* v. *Zarafonitis, supra;* cf. *Davis* v. *Packard,* 7 Pet. 276, 285. True, an appeal *ad misericordiam* may result, as with civil bail, in a remission of the penalty. This power of remission has been exercised from distant times both in the English courts (*King* v. *Tomb,* 10 Mod. 278; *In re Pellow,* 13 Price 299) and here. *United States* v. *Kelleher,* 57 F. (2d) 684. For the courts of the United States it is now regulated by statute. R. S. § 1020; 18 U. S. C. § 601. One of the prescribed

conditions is that a trial can still be had. This appears from the statute which is quoted in the margin.[3] The trial, of course, must be a reality, not the shadow of a name. At best, remission of the forfeiture is granted as an act of grace. The remedy for that reason is by motion or petition, not by answer and a plea in bar. *Detroit Fidelity & Surety Co.* v. *United States, supra,* at 568; *United States* v. *Costello, supra; Southern Surety Co.* v. *United States,* 23 F. (2d) 55; *United States* v. *Dunbar,* 83 Fed. 151; *Hardy* v. *United States,* 71 Fed. 158. The respondents do not appeal for grace, if it be assumed that grace has any place in the enforcement of such a liability as theirs. They defend upon the ground that the obligation is extinguished.

The point is faintly made that the Government was at fault in failing to bring suit more promptly after the breach of the condition. The complaint was filed in July, 1933, while the Prohibition Act was still in force. Laches within the term of the statute of limitations is no defense at law. *Cross* v. *Allen,* 141 U. S. 528, 537; *Sprigg* v. *Bank of Mt. Pleasant,* 14 Pet. 201, 207. Least of all is it a defense to an action by the sovereign. *United States* v. *Kirkpatrick,* 9 Wheat. 720, 735, 736; *Dox* v. *Postmaster General,* 1 Pet. 318, 325.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*

---

[3] " When any recognizance in a criminal cause, taken for, or in, or returnable to, any court of the United States, is forfeited by a breach of the condition thereof, such court may, in its discretion, remit the whole or a part of the penalty, whenever it appears to the court that there has been no willful default of the party, and that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced."

Cf. New York Code of Criminal Procedure, §§ 595, 597,