## UNITED STATES v. LA VINE.

No. 18514.

District Court, D. Maryland.

June 23, 1939.

Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md.

Wm. B. Isgrig, of Little Rock. Ark., for petitioners.

COLEMAN, District Judge.

This case is before the Court on the petition of two bondsmen to have the forfeiture of their bail stricken out.

The bail was given for one Robert E. La Vine. The material facts under which this was done are as follows: La Vine was indicted by the Grand Jury for the District of Maryland for violation of the Mann Act (18 U.S.C.A. § 397 et seq.) on June 15th, 1937. His bail was originally set at $5,000 and the present petitioners, William B. Isgrig of Little Rock, Arkansas, and L. E. Cole, a professional bondsman in the same locality, went bail for him. There appears to have been no connection between the two bondsmen except that they were friends. Before the date set for trial, namely, September 24th, 1937, which through inadvertence in the Clerk's office was first given as September 27th, thus necessitating the issuance of two sets of notices, La Vine left Arkansas without the knowledge of the bondsmen, whereupon they forwarded the notices of trial which they had received, to the address which he had left as his place of business. These notices thus forwarded by the bondsmen were never returned to them. At the trial date, La Vine failed to appear. His bail was called and forfeited. Several months later, that is, on January 17th, 1938, La Vine was apprehended in Ohio, largely as a result of information and efforts which one of the bondsmen, Isgrig, made in cooperation with the Federal Bureau of Investigation. Bail was then fixed at $10,000. On default of same, La Vine was brought to Baltimore, and on February 9th, 1938, was arraigned, plead guilty and sentenced to a penitentiary term of five years, and was also fined $5,000 and costs, with commitment in default of payment of the fine. Thereafter, on October 20th, 1938, both bondsmen filed their petitions to have the bail forfeiture stricken out. The Government answered, opposing the

granting of the petition on the ground that La Vine's original failure to appear and answer to the charge was willful. Hearing was accorded on these petitions at which petitioner Isgrig testified, and testimony was also taken on behalf of the Government, which established by the Court records that the notices above referred to had been duly sent, etc. Petitioner Isgrig testified that he had been duped by defendant La Vine; that he had not been acquainted with him until shortly before going on his bond, and that the only reason he did so was that LaVine had recently set up a filling station near his, Isgrig's farm; that he, Isgrig, dealt with him; that he thought LaVine owned the filling station and was financially responsible and honest. The petition filed by Isgrig and Cole is to the effect that misunderstanding had been caused by a change in the date of the trial and that La Vine's default was not willful. However, Isgrig in testifying, rested his claim for relief from the bail forfeiture on the fact that, as he claimed, he had been grossly deceived by the defendant; and that he had made every effort to assist the Government in finding the defendant as soon as he learned he had run away.

The statute which controls the circumstances under which this Court may remit in whole or in part a bail forfeiture is as follows (18 U.S.C.A. § 601): "When any recognizance in a criminal cause, taken for, or in, or returnable to, any court of the United States, is forfeited by a breach of the condition thereof, such court may, in its discretion, remit the whole or a part of the penalty, whenever it appears to the court that there has been no willful default of the party, and that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced."

In the most recent decision in this Circuit construing this statute, United States v. Nordenholz, 4 Cir., 95 F.2d 756, the Circuit Court of Appeals, in reversing a decision of this Court, on facts quite dissimilar to those here involved because in that case the defendant was never found and, therefore, a trial was never had and the prosecution was dropped, nevertheless held that the trial court can never exercise discretion in remission of penalty upon forfeiture of bail if the default of the defendant was, in fact, willful, saying as follows (95 F.2d at page 758): "The court's discretion was not unlimited. It

was a judicial discretion, to be exercised only whenever it appeared that there had been (1) no willful default of the party; (2) that a trial could, notwithstanding, be had; and (3) that justice did not require the penalty to be enforced. The law leaves no room for other considerations, however forceful." In so deciding the court cited United States v. Robinson, 4 Cir., 158 F. 410, one of its previous decisions, the facts in which closely approach those in the present case. There, the defendant was duly notified to appear but failed to do so. Judgment nisi of forfeiture against the two bondsmen was entered at the same term of court and scire facias issued and was served upon them. Shortly after this term, one of them apprehended the defendant, surrendered him to the court and at the following May term the case was duly disposed of. One of the bondsmen, assuming that the apprehension and surrender of his principal was an exoneration of his liability upon his bail bond, filed no answer to the scire facias and at the May term a final judgment was rendered against him. Upon these facts the trial court vacated the judgment and the Circuit Court of Appeals reversed this action, resting its decision solely upon the fact that the default of the defendant was willful. The Court said (158 F. at page 412): "While in a case like the one at bar a surety may suffer hardship owing to the provisions of this statute, nevertheless, its terms are plain and unmistakable. It clearly defines the circumstances under which the court may exercise its discretion and remit the whole or a part of the penalty, to wit, when there has been no willful default; and inasmuch as the court in this case found as a fact that the default was willful, it necessarily follows that it was not within the discretion of the court to vacate or modify the judgment in question."

It seems clear that in the Nordenholz case, the Court intended to make no distinction between a situation where, as in that case, the defendant was never found, and a situation such as the one now presented and such as was also presented in the Robinson case, where the defendant was subsequently found, due largely to the bondsman's efforts, arraigned and his case disposed of. In other words, we must construe the Nordenholz case as an affirmation of the Robinson case.

The argument is certainly not without considerable force that the kind of case

which Congress was aiming to cover when it imposed the second condition for permitting remission of the penalty, namely, "that a trial can, notwithstanding, be had in the cause," was one where the question of a trial was still in futuro. Note the use of the word "can" be, and not "was", or "could have been," had. Note also the statement in Judge Northcott's opinion in the Nordenholz case (95 F.2d at page 758): "The government may have dismissed the case because of Dempsey's default, yet the fact remains that, at the time of the filing of the petition, a trial of Dempsey could not be had." Of course, by the very language of the statute it was the obvious intention of Congress, and rightly so, that bondsmen should never be allowed to treat lightly the fact that they have given bail. However, assuming bona fides on the part of the bondsman, and assuming further that at the time he petitions for remission of the forfeiture, we have a situation, not where a trial has not been had or *could* not be had, but where, on the contrary, as in the case now before us, a trial has actually taken place and without any prejudice to the Government, except some expense incident to instituting the investigation, etc., which led to the defendant's arrest, and some delay, the contention that the latter type of case should be treated as not within the contemplation of the statute is a forceful one. If such a distinction were permissible, it would be possible to alter the amount of the forfeiture to take care of the actual loss by the Government, the statute providing for remission of the whole or a part of the penalty under specified conditions, and if it be determined that the case is not one which falls within the statute, the Court would then have similar discretion in such other case.

In other words, this argument, while accepting, as it must, the fact that the three conditions in the statute are used conjunctively, and, therefore, failure to satisfy any one of them, for example failure to prove that the default of the defendant was not willful, is enough to deny relief under any case that the statute was intended to cover, still lends force to the inquiry whether the statute *is* intended to cover a case such as the one here presented. However, as already indicated, this Court is precluded by the decisions of the Circuit Court of Appeals for this Circuit from giving any effect to the afore-

going considerations. See, also, United States v. Kelleher, 57 F.2d 684, 84 A.L.R. 14, a fairly recent decision of the Circuit Court of Appeals for the Second Circuit, with an opinion by Judge Learned Hand, in which all of the decisions of the various Circuits, up to that time, construing this statute are reviewed, and as to which certiorari by the Supreme Court was denied, 286 U.S. 565, 52 S.Ct. 646, 76 L.Ed. 1297.

In that case, the same basic question was involved as here, namely, whether forfeiture of bail should be remitted when the prisoner later surrenders and is tried, under circumstances where the bondsman has not been responsible for his principal's default. Judge Hand points out that it has been the practice to grant such remission in England and that the same was true in the Federal Courts prior to the passage of the present statute, and indeed, thereafter, until comparatively recently, and that the decisions were not, even up to that time (1932), uniform, although there has been entire unanimity in the cases decided by the Circuit Courts of Appeal and in the District of Columbia. Judge Hand concluded with the following summation (57 F.2d at page 685, 84 A.L.R. 14): "The result seems to us unnecessarily harsh, and not required by the language of Rev.St. § 1020 (18 U.S.C.A. § 601). The situation presupposes that the trial can be had, and for this reason United States v. Costello [6 Cir.], 47 F.2d 684, is not strictly in point. When it can, the primary purpose of the recognizance has been fulfilled, for it is not to 'enrich the Treasury,' as Marshall, C. J., observed in United States v. Feely, Fed.Cas.No.15,082. 'Public justice' does not require a penalty to be imposed upon the bail who has produced his principal, unless the prosecution has been prejudiced by the delay; why he should be vicariously cast for a default which he does not share we cannot understand. Of course he must respond as indemnitor for any pecuniary loss thrown upon the cognizee, but on ordinary principles applicable to penalties the remainder would be remitted. The change of the word 'parties' to 'party,' in Rev.St. § 1020, appears to us a broken reed on which to support the opposite construction, though it has been its main reliance. We read the later form distributively, in accordance with pre-existing law, and think that while the principal should not be relieved when he is the 'party' seek-

ing remission, the bail should, when he is. But we also think that we should yield to the opinion of six other circuits and the District of Columbia, there being no dissent, and that my decision in United States v. O'Leary, D.C., 275 F. 202, must be overruled until the Supreme Court sees fit to declare otherwise, if it ever should."

■ In theory, at least, the bondsman is substituted for the jailer and by this theory the bondsman must, at all times, keep in such close contact with the defendant that he will be able at any time to deliver him to the court to answer the matters with which he has been charged and such indeed is the condition of the bond. The bondsman is thus legally obliged to keep in active and constant contact with the defendant, and upon his failure to do this, he is legally bound by the consequences. Perhaps the present bondsmen were not as alert as they might have been to guard against their principal's disappearance. Still, the uncontradicted evidence is that they were the innocent victims of his deceit.

In United States v. Mack, 295 U.S. 480, 55 S.Ct. 813, 79 L.Ed. 1559, decided in 1935 (a case not referred to in the Nordenholz case, supra, and rendered subsequent to the decision in the Kelleher case, supra), the Supreme Court dealt with liability of sureties on a bond executed pursuant to Section 26, Title II of the National Prohibition Act, 27 U.S.C.A. § 40, and in discussing the analogy of bail in criminal cases, spoke as follows, which is not without much significance in relation to the present case (295 U.S. at page 488, 489, 55 S.Ct. at page 817, 79 L.Ed. 1559): "The bail are bound at once upon the principal's default. 'If the condition of the bail bond is broken by the failure of the principal to appear, the sureties become the absolute debtors of the United States for the amount of the penalty.' United States v. Zarafonitis, 5 Cir., 150 F. 97, 99, 10 Ann.Cas. 290; United States v. Van Fossen, 28 Fed.Cas. 357, at page 358, No. 16,607; People v. Anable, 7 Hill, N.Y., 33. Collection may be enforced either by scire facias in the court which has possession of the record or by an ordinary suit in any other court of competent jurisdiction. United States v. Zarafonitis, supra; cf. Davis v. Packard,

7 Pet. 276, 285, 8 L.Ed. 684. True, an appeal ad misericordiam may result, as with civil bail, in a remission of the penalty. This power of remission has been exercised from distant times both in the English courts (King v. Tomb, 10 Mod. 278; In re Pellow, 13 Price 299) and here. United States v. Kelleher (C.C.A.) 57 F.2d 684, 84 A.L.R. 14. For the courts of the United States it is now regulated by statute. R.S. § 1020; 18 U.S.C. § 601, 18 U.S.C.A. § 601. *One of the prescribed conditions is that a trial can still be had. This appears from the statute which is quoted in the margin. The trial, of course, must be a reality, not the shadow of a name. At best, remission of the forfeiture is granted as an act of grace.* The remedy for that reason is by motion or petition, not by answer and a plea in bar. * * *" (Italics inserted).

■ In the present case, the hardship lies in the large size of the bond, and in the fact that the defendant has ultimately been apprehended and his case disposed of. But the Circuit Court of Appeals has taken the position that, in effect, these things are to be treated as fortuitous, so far as the bondsmen are concerned; that the fact that the defendant was ultimately found is incidental only; namely, that his subsequent apprehension and appearance in court were not pursuant to the bond which was given to accomplish that purpose, but due to extraneous agencies. Thus, while for the reasons stated, the circumstances in the present case would appear to be such that if this Court had the discretion under the statute, it would be disposed to grant remission of the forfeiture except to the extent of reimbursement to the Government for expense entailed, it is powerless to grant any relief to the present bondsmen except on the assumption that the Mack case, supra, over-rides the Nordenholz case, supra, with respect to the present state of facts; and since what was said in the Mack case was by way of dictum, we feel it is for the Circuit Court of Appeals, or the Supreme Court, and not this Court, to determine what, if any, differentiation there shall be.

An order will be signed in accordance with this opinion, denying the petition to have the forfeiture stricken out.