RAMONA SERRANO DE TALAVERA ET AL., Plaintiffs and Appellants, v. ONOFRE TALLAVERA SERRANO ET AL., Defendants and Appellees.

No. 9053.   Argued June 1, 1945.—Decided November 29, 1945

*Pedro E. Anglade* for appellants. *Pedro J. Aguilar* and *L. Mercader* for appellees.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

Plaintiffs and defendants herein are the heirs of Dámaso Talavera Nieves. The former alleged in their complaint that at the death of their predecessor, the latter left a property of 74.83 acres (*cuerdas*) described in the complaint, situated in the municipal district of Hatillo; that said property was mortgaged in favor of the Federal Land Bank of Baltimore to secure a loan which their predecessor had received; that subsequent to the latter's death one of the defendants, his son Onofre Talavera Serrano, was appointed manager of the property by the other heirs; that he administered it for a period of 3 years at the end of which he ceased as said manager; that shortly thereafter another defendant, Dámaso Talavera Serrano, was designated for that same position, and that all the heirs granted him a power of attorney; that while the property was being administered by the latter, the mortgage was foreclosed by the bank and adjudicated in its favor; that when the heirs of Talavera were served with process, the widow of Dámaso Talavera Nieves and some of her children sought the advice

of Dámaso Talavera Serrano and the latter told them not to worry about the foreclosure proceeding, as he had agreed with the bank to have the mortgage foreclosed in order that he could obtain the property, because the bank thought that it would be easier to collect the instalments from one person only and that at the same time it would be more convenient for the heirs, since the purchase price would be divided into 20 monthly instalments, with the understanding that Dámaso would acquire the property for all the heirs in the same proportion which they had at the death of their predecessor; that after the foreclosure proceeding Dámaso purchased it from the bank in his own name and now refuses to recognize the title of the other heirs to said property.

As a second cause of action, they further alleged that during the administration of both brothers the latter had appropriated for their own benefit the products yielded by the property and that they had not paid the mortgage instalments to the bank nor the taxes nor any other debt of the estate, and that due to the default of payment the mortgage had been foreclosed in the aforesaid manner. The complaint closes by praying the court to declare that the property was acquired by Dámaso Talavera Serrano in trust for himself and for the other heirs, and that Dámaso and Onofre Talavera Serrano be ordered to render accounts of their respective administrations and pay to the plaintiffs their shares of fruits yielded or that should have been yielded.

The defendants in their answer denied the existence of the trust: they referred to some payments made by the administrators from the meagre benefit yielded by the property: they contended that during all the time referred to in the complaint and even at the filing of the answer, some of the brothers of Dámaso Talavera and his mother lived in the property. the administration of Onofre and Dámaso Talavera being confined to the small cane plantation which their father left at his death; it was further alleged that the property was sold by Dámaso Talavera Serrano to his brother

Cayetano who is now in possession thereof despite the fact that his mother and some of his brothers live in the farm without paying any rental or consideration whatsoever.

Upon passing on the merits of the case, the lower court decided that the plaintiffs had not proved the existence of the trust, and as to the action for rendering the accounts, it held that the plaintiffs had incurred in laches, wherefore it dismissed the complaint as to both causes of action.

■ Indeed, the evidence does not support the alleged existence of the trust. The evidence tending to show that Dámaso Talavera, in the presence of other persons, as testified by Roberto Martínez, plaintiffs' attorney, had admitted having acquired the property for all the heirs, is extremely weak, and there is really no reason whatsoever to believe that Dámaso Talavera should act so generously, when he had no money from the plaintiffs to acquire said farm. On the contrary, it appears from the evidence that the purchase took place more than one year after the property had been adjudicated to the bank, and that shortly thereafter, Dámaso sold it to his brother Cayetano. The acquisition may perhaps be attributed to his desire of keeping his mother and brother in the farm where they had lived for so many years.

It is hard to believe that Dámaso Talavera should give his mother and brothers the explanation which they attribute to him, to the effect that the bank wanted him to buy the property in order to deal with one person only in the matter of payments of interest and instalments. It should be borne in mind that Dámaso Talavera had a power of attorney, which all the heirs had granted him, long before the foreclosure of the mortgage, for which reason it did not matter to the bank whether the property appeared in the name of Dámaso Talavera or not.

We agree with the court *a quo* that the evidence does not support the existence of the trust. But we part company with the court as regards its conclusion that the de-

fendants are not bound to render accounts of their administration because the plaintiffs had incurred in laches.

■ The action for an accounting in the Anglo-American law is one in equity and, since the defense of laches is an equitable doctrine, it is applicable to actions for accounting under the Anglo-American law.· But even under this system of jurisprudence, laches within the term of the statute of limitations is no defense at law. *United States* v *Mack*, 295 U. S. 480, 489 (1935); *Transbel Inv. Co.* v. *Scott*, 26 A. (2d) 205 (Pa. 1942).

Irrespective of whether or not the evidence in this case was sufficient to invoke the defense of laches in an action for accounting in a court of equity, the doctrine of laches is not applicable to the present case. In this jurisdiction, the action to render accounts does not spring from Equity Jurisprudence. On the contrary, it is governed by our Civil Code which in turn originated in the Spanish Civil Code.[1] Pursuant to § 1861 of the Civil Code, actions are barred by a mere lapse of the time specified by law and, as decided by the Supreme Court of Cuba in its *decision No. 163 of November 5, 1931,* one who pleads prescription *should prove nothing else than* the lapse of time. Therefore, the period of prescription fixed by law may not be shortened by any circumstance.

· We accept that in this jurisdiction the doctrine of laches has often been applied, but it has always been in connection with extraordinary remedies taken from the Anglo-American law.

■■ Since there is no special term fixed by law for the prescription of the action for an accounting, it being a personal action, the period of prescription is fifteen years, pursuant to § 1864 of the Civil Code (1930 ed.). But since under § 1872 of that same code, the term for the prescription of actions for an accounting shall be computed from the day on which the person who should have rendered such account

---

[1] See §§ 1872, 986, and 218–222 of the Civil Code, 1930 ed.

relinquished his office, and as in the present case the first manager, Onofre Talavera Serrano, ceased as such in 1931 and the original complaint was filed prior to July 22, 1941, we are bound to conclude that the action in this case is not barred.

For the aforesaid reasons the judgment appealed from must be affirmed as to the first cause of action, reversed as to the second one, and the judgment which should have been entered by the lower court, is hereby rendered as follows: The complaint is dismissed as to the first cause of action, and sustained as to the second, and the defendants Onofre and Dámaso Talavera Serrano are hereby ordered to render accounts to the plaintiffs of their respective administrations, within sixty days, counted from the return of the mandate to the lower court, with costs on all the defendants.