THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MOISÉS HERNÁNDEZ TURELL, Defendant and Appellant.

No. 15478. Argued November 2, 1953.—Decided February 8, 1954.

*Guillermo S. Pierluisi* for appellant. *José Trías Monge, Attorney General,* and *Rafael L. Ydrach Yordán, Assistant Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The former District Court of Puerto Rico, Ponce Section, found Moisés Hernández Turell guilty of a violation of § 10 of Act No. 220 of May 15, 1948 (Sess. Laws, p. 738), as amended [*Bolita* Act], and sentenced him to an indefinite term of from 1 to 5 years imprisonment in the penitentiary at hard labor. Feeling aggrieved by the judgment the defendant appealed and in support of his petition alleges: (1) that the trial court erred in refusing to suppress the evidence

seized at his house by virtue of a search warrant which was void; (2) that the court likewise erred in admitting in evidence the extrajudicial confession of the defendant and his admissions without having previously proved the *corpus de-, licti*, and (3) that the court erred in considering proved the offense charged.

 The first error is based on (1) the alleged existence of "a fundamental variance between the probable cause stated in the affidavit or sworn statement of police officer, Francisco Vázquez, license No. 765, in support of the search warrant, and the probable cause stated by the Honorable Judge who issued the search warrant, in the warrant itself," and (2) that the affidavit did not furnish sufficient basis to order that the search be practiced either at daytime or at nighttime.[1] These grounds are insufficient to decree the nullity of the search warrant and of the search practiced. Let us see.

In the affidavit supporting the search warrant, after describing the residence of the defendant-appellant, the following is set forth:

"That the respondent is engaged in the manipulation, administration and sale of *Bolipool* and *Bolita,* slips, tickets, notebooks, and *papeletas,* all in connection with the clandestine lotteries of *Bolipool, Bolita* in contravention of the provisions of Act No. 220 of May 15, 1948, in force in Puerto Rico, declaring a public nuisance the clandestine game known as *bolita, bolipool* as before mentioned.

"That the foregoing is known to me of my own personal knowledge because on several occasions while the affiant was around the place known as the Barriada Borinquen, where the respondent lives, I could observe that some men addressed the petitioner (*sic*) and spoke to him in connection with this clandestine game and he gave them full information of the prizes, how much the pool had paid and who had won prizes in the Barriada. On January 6, 1951, particularly after having heard

---

[1] The defendant timely requested the trial court that the search warrant be declared void and the evidence held by virtue of it be suppressed, adducing besides these, other additional grounds on which he now does not insist. After hearing the parties, the trial court denied the petition.

respondent's conversation, the affiant kept on the lookout and that night he saw when defendant was selling at his house some colored tickets with numbers to a man whom I do not know, and he had in his hands several other tickets. That I could realize that it was *bolipool bolita* material because they were booklets of different colors of the type expressly used in the *bolita* and *bolipool Bancas,* it being corroborated by a conversation that he was carrying on with the purchaser and which the affiant overheard. That I could not seize that evidence, because he, that is the defendant, was within his house and I was not provided with a legal order therefor.

"That the afore-mentioned game is connected with the unlawful clandestine game of *Bolita* and *Bolipool,* which they play in combination with the last three figures of the grand prize of the official lottery drawn in Puerto Rico or in Santo Domingo, that the *Bancas* pay according to the amount stipulated by the banker and by the purchaser, the prizes being the following, grand prize, second, third, approximation and last figure of the grand prize or any other form stipulated, and the collector collects according to the number of tickets sold.

"Wherefore, I understand that the affiant knows that this game is unlawful and against the aforementioned Act No. 220 and pursuant to the provisions of § 503 of the Code of Criminal Procedure, I very respectfully pray this Hon. Court that if it finds and believes that there is probable cause that in that house the respondent is violating Act No. 220, *Bolita* and *Bolipool* Act in force, to issue the corresponding Search Warrant in order to proceed to search his residence and to seize there or on his person all evidence of tickets, slips, pencils, note-books, *papeletas,* and *bolita* or *bolipool* numbers and thus arrest the person or persons engaged in this unlawful game, and take them before you to proceed according to the law."

Insofar as pertinent, the search warrant, after describing the defendant's residence, reads:

"The house is occupied by the respondent Moisés Hernández. In said place the aforesaid respondent, during the daytime as well as at nighttime, allows and consents to the printing or engraving [of material], manages and directs as the owner, or as manager or attorney-in-fact or person in charge, or as agent or director, a clandestine lottery *banca,* commonly known

as *bolita* and *bolipool,* which he operates in this city and neighboring barrios, manipulating and circulating combinations connected with the pools of the race tracks of Puerto Rico, bills, tickets or slips or notebooks, or lists of numbers of *bolita* or *bolipool,* rubber stamps and other tools or implements; that the slips or tickets or *billetes* or *papeletas* of clandestine pools, and other tools and implements represent shares, chances, and interest in the clandestine lottery known as *bolita bolipool;* that to carry out this unlawful game, the respondent uses also rubber stamps, numbered balls, shake bottles (*candungos*), money, blank and printed *papeletas* and other tools or implements; and since this court considers that there is probable cause that Moisés Hernández at the place and in the manner before mentioned is using the materials and tools afore-mentioned knowingly and intentionally, in violation of Act No. 220 of May 14, 1948 which declares the such games a public nuisance, and punishes the sale, possession, transportation, and manipulation, etc., of such materials, tools or implements;

"He Is Hereby Ordered to proceed immediately, at daytime or at nighttime to search the previously described house of Moisés Hernández, in search of the following effects; *bolipool* slips, *Bolita,* tickets, clandestine combinations connected with the pools of the race tracks of Puerto Rico, lists of numbers representing shares, chances, and interest, shake bottles (*candungos*) numbered balls, money, and other tools and implements which are being used in violation of the provisions of Act No. 220 of May 15, 1948 and if you find all the effects or part thereof bring them immediately to my presence in the Municipal Court of Ponce, Puerto Rico, Second Section."

We agree with the appellant that since the search warrant proceeding is an exception to the right of the people to be secure in their home against unreasonable searches,[2] said proceeding should be executed in strict compliance with the constitutional guaranties and the Act to that effect. *United States* v. *Rembert,* 284 Fed. 996; *United States* v. *Miller,*

---

[2] It has been likewise held that this right is connected with the privilege against self-crimination. *Boyd* v. *United States,* 116 U. S. 616, 29 L. Ed. 746; *Davis* v. *United States,* 328 U. S. 582, 90 L. Ed. 1453, reconsideration denied, 329 U. S. 824.

36 F. Supp. 391; *United States* v. *Zager*, 14 F. Supp. 23, affirmed in 84 F.2d 1023, cert. den. 299 U. S. 558.

Section 2 of the Organic Act of Puerto Rico, 48 U.S.C.A. § 737, in force at the time that defendant was tried, provided in part in clauses 12 and 13 the following:

"The right to be secure against unreasonable searches and seizures shall not be violated.

"No warrant for arrest or search shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." [3]

Section 503 of the Code of Criminal Procedure provides that:

"Section 503.— (1525 Cal.) A search warrant can not be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched."

This right so clearly guaranteed by our Organic Act and by our Code, *People* v. *Capriles*, 58 P.R.R. 551, has been regarded as an integral part of the very essence of constitutional liberty. *Gouled* v. *United States*, 255 U. S. 298, 65 L. ed. 647; *Harris* v. *United States*, 151 F. 2d 837 (C.A. 10th, 1945). It is imperative, therefore, that the courts examine thoroughly such proceedings in order to be certain that there has been strict adherence to the constitutional and statutory provisions.

---

[3] Although it is not apposite herein, the Constitution of the Commonwealth of Puerto Rico in force since July 25, 1952 provides to that effect the following:

"Section 10.—The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated.

"Wire-tapping is prohibited.

"No warrant for arrest or search and seizure shall issue except by judicial authority and only upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the persons to be arrested or the things to be seized.

"Evidence obtained in violation of this section shall be inadmissible in the courts."

The defendant does not question the sufficiency of the affidavit supporting the search warrant, insofar as the existence of probable cause is concerned. Therefore, the search warrant will be sufficient if the material facts alleged in the affidavit are set forth therein, *Heyvert* v. *State*, 194 N. E. 324; 79 C.J.S. 883, § 79 *b* or as § 507 of the Code of Criminal Procedure provides, if the grounds of the application are stated. We have carefully examined the search warrant in question and it reveals that the material facts alleged in the affidavit or sworn statement are stated therein; that it contains the grounds on which the petition was based and that the same complies with the other constitutional and statutory provisions. *Cf. Weinberg* v. *United States*, 126 F. 2d 1004 (C.A.2d 1942). Although the search warrant contains additional material supplied by the judge, it may be considered as surplusage. Cornelius, *Search & Seizure*, 508, § 210; *cf. McAmis* v. *State*, 141 F.2d 301; 39 Va.L.R. 114. "Mention in the warrant of a statute which does not fit the case or *unnecessary words*, not affecting the rights of the person against whom it is executed, may be rejected as surplusage." (Italics ours.) *Hysler* v. *United States*, 86 F. 2d 918 (C.A. 5th, 1936).

The other ground alleged in this first error is frivolous. Even accepting, arguendo, that the affidavit does not furnish sufficient basis, as he alleges, to order the search "at daytime or at nighttime," see however, *People* v. *Negrón*, 72 P.R.R. 825 and *People* v. *De Jesús*, 73 P.R.R. 699, it appears from the evidence that the premises were searched during the daytime and therefore the search and seizure is valid. *United States* v. *Lepper*, 288 Fed. 136, affirmed, without opinion, in 295 Fed. 1017; *United States* v. *Callahan*, 17 F. 2d 937; *United States* v. *Fitzmaurice*, 45 F.2d 133.

The second assignment is frivolous. In the exercise of its discretion the trial court may determine the order of the evidence, and without prejudicing defendant's rights, it may put in first the evidence of the defendant's confession and

then the evidence of the *corpus delicti, People* v. *Dones,* 56 P.R.R. 201, 206; 7 Wigmore *On Evidence,* § 2073, p. 404; *People* v. *Cowling,* 66 Cal. App. 468, 44 P. 2d 441.

 Let us now pass to consider the third assignment. The information substantially charges that defendant "in or about January 16, 1951, and in Ponce, Puerto Rico, of the judicial District of Puerto Rico, there and then, unlawfully, voluntarily, maliciously and criminally, was the owner, director and manager of several *bancas* of the clandestine game known as *bolita* and/or *bolipool.*" Section 10 of the *Bolita* Act, as amended by Act No. 264 of May 9, 1950 (Sess. Laws, p. 686) with the violation of which appellant is charged provides:

"Section 10.—Any owner, attorney-in-fact, agent, person in charge, director or manager, of the games prohibited by this Act, shall be guilty of a felony and shall be arrested immediately, and the case brought without delay before the district attorney, with jurisdiction in the matter, and upon conviction, such person shall be punished by imprisonment in the Penitentiary, for a term, which shall in no case be less than one (1) year or more than ten (10) years; *Provided* that all the trials for violations of this section shall be tried by the court without a jury; *And, provided, further,* that no person convicted of a violation of the provisions of this section shall enjoy the benefits of Act No. 259 approved April 3, 1946, as amended by Act No. 177 of May 4, 1949."

It is urged now that the People did not establish the *corpus delicti* irrespective of the confessions and admissions of the defendant.

It is a well-settled rule that the defendant's confession should be corroborated by evidence *aliunde* tending to establish the *corpus delicti,* 7 Wigmore, *op. cit.,* § 2071, p. 395; Wharton's *Criminal Law,* § 357, p. 462; Wharton's *Criminal Evidence,* § 640, p. 1072; Annotation in 127 A.L.R. 1130. See also, *People* v. *Rosado,* 17 P.R.R. 417; *People* v. *Rodríguez,* 28 P.R.R. 464; *People* v. *Almodóvar,* 46 P.R.R. 96; *People* v. *Méndez,* 41 P.R.R. 274; *People* v. *Rivera,* 67 P.R.R.

275; *People* v. *Acosta*, 57 P.R.R. 741 and *People* v. *Declet*, 65 P.R.R. 22.[4] To decide whether or not in the instant case such evidence exists, we must first determine what the *corpus delicti* consists of under § 10 of the *Bolita* Act.

Discussing the meaning of the term *corpus delicti* Wigmore states:

"It is clear that an analysis of every crime, with reference to this element of it [corpus delicti] reveals three component parts, *first*, the *occurrence* of the specific kind of injury or loss (as, in homicide, a person deceased; in arson, a house burnt; in larceny, property missing) ; *secondly*, somebody's criminality (in contract, *e.g.* to accident) as the source of the loss,—these two together involving the commission of a crime by *somebody;* and, *thirdly*, the accused's *identity* as the doer of this crime." (7 Wigmore *On Evidence,* p. 401.)

Under the orthodox definition the term *corpus delicti* means that a specific kind of injury or loss has been sustained as in homicide for example, a person deceased; in arson, a house burnt; in larceny, property missing. However, in their decisions the majority of the judges have included in that term the second element, that is, that the injury or loss was caused by somebody's criminality. A third view, indeed, too absurd to be argued with, includes the third element also, *i.e.* the accused's identity or agency as the criminal. By this view, the term *corpus delicti* would therefore be synonymous with the whole of the charge. 7 Wigmore, *op. cit.*, p. 402.

This Court has not accepted the orthodox sense of that term, nor has it included in the same, the third element. On the contrary, for some time we have now been holding that the *corpus delicti* is integrated by the first two elements, and

---

[4] This question has also been involved in other cases brought to this Court, although incidentally. See for example *People* v. *Colón et al.*, 39 P.R.R. 817, where after this Court had found that the *corpus delicti* had been established it stated at page 819, "that the voluntary confession of a defendant is sufficient to support a judgment of conviction." In *People* v. *Morales,* 51 P.R.R. 204, and in *People* v. *Vidal,* 55 P.R.R. 226, the question at issue herein was not raised. In *People* v. *Feliciano,* 70 P.R.R. 834, the *corpus delicti* had already been established and in *People* v. *Ramírez,* 52 P.R.R. 470, there was no confession involved.

that therefore, in order for it to be established the evidence must tend to show: (1) that a specific kind of injury or loss has been sustained, and (2) that somebody's criminality has been the source of the loss. We have accepted the definition given by the jurisprudence that *"corpus delicti* 'the body or substance of the crime,' means, as applied to a particular offense, the actual commission by someone of the particular crime charged." *People* v. *Maceira,* 40 P.R.R. 671. See, also, *People* v. *Matos and Matos,* 26 P.R.R. 520; *People* v. *Colón et al.,* 39 P.R.R. 817; *People* v. *Almodóvar,* 46 P.R.R. 96; *People* v. *Acosta,* 57 P.R.R. 741; *People* v. *Declet,* 65 P.R.R. 22; *People* v. *Rivera,* 67 P.R.R. 275.

Let us now examine the evidence for the prosecution.[5] This consisted of the testimony of the policemen Francisco Vázquez and Romualdo García, the testimony of the prosecuting attorney, the extrajudicial confession of the defendant and certain *bolita* and/or *bolipool* material.

Policeman Vázquez testified in brief that on January 16, 1951, he searched, under a warrant, together with Lieutenant Rodríguez and Policemen Aníbal Correa and Romualdo García, the residence of the defendant, located at Barriada Borinquen of Ponce and there seized *bolipool* material consisting of 7,320 one-fifth parts of *bolipool* from different *bancas* and of different colors; fifteen lists containing numbers of three digits and names of persons and a notebook and pencil. Over defendant's objection and exception he further testified that when the material was seized the defendant stated that he owned it, because that was his business, that of *bolipool,* which he managed. The rest of his testimony tends to show how the *Bolita* game operates.

Policeman Romualdo García corroborated insofar as essential the testimony of his companion and defendant's admissions were admitted in evidence, again over the defendant's objection and exception.

---

[5] The defendant rested on the questions of law which he had raised and did not introduce any evidence for the defense.

The Assistant Prosecuting Attorney Veray testified in brief, that on the same day of the search, the defendant subscribed before him voluntarily an extrajudicial confession.[6] Over the objection and exception of the defense, the confession was admitted in evidence. The other documentary evidence presented before the prosecuting attorney consisted of the *bolita* material seized in the defendant's residence.

If we eliminate from that evidence the admissions and defendant's extrajudicial confession only a single fact would be proved, to wit, that the defendant had in his possession, in his residence, certain material (tickets, notebooks, lists of numbers, slips) which could be utilized or used in the clandestine game known as *bolita* and/or *bolipool.*

However, § 4 of the Act provides imprisonment in jail for the first violation for any person caught carrying or transporting or who *has in his possession for any reason,* specific materials and implements [as described in that Section] which can be used for the unlawful games of *bolita, bolipool,* etc., and it also imposes the same punishment on any person who possesses, sells or in any way transports these or any other similar material which may be utilized or used in the unlawful games or connected with its practice. By its own nature and by the illustration made by the witnesses for the prosecution as to how the *bolita* game is played, the material seized in appellant's residence establishes the fact that the material was used in the *bolita* game or was connected with the practice thereof and that therefore, its possession was illegal and constituted a crime. See *Romero* v. *People of Puerto Rico,* 182 F. 2d 864. From the possession of such a great amount

---

[6] In that confession the defendant admits that he is the owner of all the *bolita* material seized by the police in his residence; that he is the owner of the pools "Pueblo," "Mi Ayuda" and "Alondra"; that that *Bolipool* was played in combination with the National Lottery of Santo Domingo; that he personally managed and manipulated those pools at his own house without the interference of any other person; that he had the tickets printed and he sold them personally; that for four months he has been engaged in the *bolita* as a banker.

of *bolita* material,[7] it may be logically inferred that one of the games prohibited by the Law existed. *Bolita* and the *bolipool* are played by means of independent *bancas* which receive money from the sale of slips or numbers and which pay a money prize to the person possessing lucky numbers in the lotteries. See *People* v. *Portalatín*, 72 P.R.R. 145. These pools, however, are operated by their owners, administrators, attorneys in fact, persons in charge, agents, etc., they do not operate by themselves. Therefore, since the existence of a *bolipool* game is proved, the fact is established that somebody owns it, or that somebody administers it either as an agent, attorney in fact, person in charge, etc. Under the circumstances, there was no need for additional proof other than that introduced in the instant case, aside from defendant's admissions and confession to establish the *corpus delicti*. Appellant's admissions and extrajudicial confession point to him as "the somebody" who was the owner, director and administrator of a *bolita* or *bolipool* game. The error assigned was not committed.

The judgment appealed from will be affirmed.

Mr. Justice Sifre concurs in the result.

---

[7] The material seized in defendant's residence is described as:

". . . two packages of *Bolipool*, paper slips of a deep yellow color, orange; two light yellow packages of *bolipool* of the same material also, tied together, and attached with rubber bands. The first tickets, the first two packages, have numbers of three digits with a series of smaller additional numbers and the words 'Mi Ayuda.' As to the two light yellow packages, they have the same numeration, but with the word 'Pueblo.' There is also a small package tied with a rubber band which reads like the numbers, that is to say, the *bolipool* slips that we mentioned, with the same dominations, and with the name 'Alondra.' A series of lists with numbers, fifteen papers of irregular shape, regular size, with lists of numbers of three figures, dashes in some cases, and one unit to the right, with words written on them, the papers being brown, white, and yellow. Six paper slips, large, the first five covered entirely with numbers of three figures and the last with the names of persons and numbers of three figures with dashes and units to the right. And a notebook which reads: 'Roll Book, National, No. 422,' with three-digit numbers written on it with pencil, and names of persons on different pages, and dashes after the three digits, with units to the right. This notebook is written throughout all its pages and its front cover and back cover is red, dark red cardboard." (T. of the E., p. 14.)